# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | |
|---|---|
| **AHMED S. ISMAEL,** | CIVIL ACTION FILE NO.: |
| Plaintiff**,** | |
| | _____ |
| **vs.** | |
| | **JURY TRIAL DEMANDED** |
| **AUGUSTA RICHMOND COUNTY COMMISSION,** | |
| | COMPLAINT |
| **SHERIFF RICHARD ROUNDTREE**, in his individual and official capacity as Sheriff of the Richmond County Sheriff's Office, | |
| | DAMAGES |
| **CAPT. EVERETTE JENKINS,** in his individual capacity and acting under color of law as supervisor of the Richmond County Sheriff's Office, | INJUNCTIVE RELIEF |
| **SGT. WILLIAM MCCARTY**, in his individual capacity acting under color of law as a supervisor of the Richmond County Sheriff's Office, and | |
| **COL. CALVIN CHEW**, in his individual capacity acting under color of law as a supervisor of the Richmond County Sheriff's Office. | |
| Defendants. | |

## COMPLAINT

COMES NOW, Plaintiff Ahmed S. Ismael (hereinafter "Deputy Ismael" or "Plaintiff") in his Complaint against Defendants Augusta Richmond County Commission (hereinafter "Richmond County"), Sheriff Richard Roundtree, Captain Everette Jenkins, Sgt. William McCarty, and Col. Calvin Chew (collectively "Defendants"), and shows the Court as follows:

## INTRODUCTION

1.

Deputy Ismael, a Muslim of Arabic descent born in Iraq, a veteran of the Iraqi Army and former contractor for the United States Army, was terminated from his position as Deputy for the Richmond County Sheriff's Office in retaliation for Ismael filing a grievance during the week of September , 2021, regarding his superior Captain Jenkins, an African American, because over the prior Jenkins repeatedly and frequently said Deputy Ismael was a "terrorist," "watch out, he might have a bomb," "go back to where he came from" and "go play in the sand."

To cover-up this illegal termination, Defendants did not investigate nor act on evidence of Jenkins' discriminatory treatment of Ismael, corroborated by independent witnesses, unlawful under Title VII and other federal statutes, engaged in efforts to create a false pretext for termination, making false claims and creating a "set up" whereby Defendants gave Deputy Ismael short time to attend a meeting

2

while he was off duty, knowing that he would not be able to attend the meeting at their arbitrarily set time. This termination occurred less than two (2) weeks after the grievance was filed.

2.

Plaintiff brings this action against Defendants under 42 U.S.C. § 2000e, *et seq*. ("Title VII") for retaliation for opposition to race or national origin discrimination in employment, and for deprivations of federal rights under 42 U.S.C. §§ 1981, 1983 and 1985(3), under the jurisdictional authority of 28 U.S.C. §§ 1331 and 1343(a)(1-4) for these federal civil rights claims.

## PARTIES, JURISDICTION, AND VENUE

3.

Plaintiff was born in Iraq and is a practicing Muslim of Arabic descent,  and who was a Richmond County Sheriff's Department Deputy from approximately March 21, 2020, to September 28, 2021, and as such was an employee of Augusta Richmond County Commission, which is the Plaintiff's employer for Title VII purposes; and who now resides in Burke County.

4.

Defendant Augusta Richmond County is the Title VII employer with more than 15 employees, and who paid Plaintiff's salary as a deputy, and is subject to actions of this nature, and may be served pursuant to Rule 4 of the Federal Rules of

Civil Procedure, by serving the Mayor, Hardie Davis, in his official capacity, as the highest-ranking officer of the County Commissioners.

5.

Sheriff Richard Roundtree, an African American, is sued in his official and individual capacities as a policymaker and supervisor for actions and/or inactions taken under color of law, though not necessarily within the law, as Sheriff of Richmond County.

6.

Richmond County Sheriff's Officer Capt. Everette Jenkins, an African American, is sued individually for actions taken under color of, though not necessarily within the law, while he was employed as an officer with the Richmond County Sheriff's Office.

7.

Sgt. William McCarty, White, is sued in his individual capacity for actions and/or inactions taken under color of law, though not necessarily within the law, as a senior supervisor with the Richmond County Sheriff's Office.

8.

Col. Calvin Chew, an African American, is sued in his individual capacity for actions and/or inactions taken under color of law, though not necessarily within the law, as a senior supervisor with the Richmond County Sheriff's Office.

4

9.

This Court has subject matter jurisdiction over Plaintiff's claims against Defendants for retaliation for opposition to race or national origin discrimination in public employment under 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and for deprivations of federal rights under 42 U.S.C. §§ 1981, 1983 and 1985(3), under the jurisdictional authority of 28 U.S.C. §§ 1331 and 1343(a)(1-4), where venue is proper under 28 U.S.C. § 1391(b) and (c).

10.

All Defendants are sued alternatively both individually and jointly, or for acting in conspiracy, for proximately causing one or more deprivations of rights and injuries to Plaintiff.

11.

All conditions precedent to the institution of this suit under Title VII have been fulfilled and Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission alleging prohibited employment discrimination related to race, national origin, religion and retaliation, under Title VII, with assigned Charge No. 410-2022-02216, and the EEOC issued the Notice of Right to Sue on May 18, 2022, where this action is filed within ninety days of receipt of said Notice.

## FACTS

12.

Deputy Ismael, who was born in Iraq, and is a practicing Muslim of Arabic descent, served in the Iraqi Army from 1998 to 2000, and from 2004 to 2008, worked as a United States Army contractor at Fort Stewart, where his duties included personal security, translation, and as a cultural liaison, facts which he widely and openly shared with other Deputies, where his non-White, and non-African American appearance is obvious, and his accent is middle eastern, not of a commonly recognized American lilt.

13.

From 2009 to 2014, Deputy Ismael worked various private security and transportation jobs throughout the southeastern United States before entering public service, and from 2015 to 2017 he worked as a jail security officer for the Chatham County Sheriff's Office, and from 2018 to 2019, he worked as a Deputy Sheriff for the Bryan County Sheriff's Office.

14.

In March 2020, Ismael began working as a Deputy Sheriff for the Defendant Sheriff Roundtree as an employee paid by the Defendant Richmond County.

15.

Deputy Ismael also worked as a Deputy at an assignment known as a "special," where Richmond County Deputies are assigned to "specials" to provide on-site security for extra pay, as approved, controlled and regulated by the Defendant Sheriff and the Sheriff's supervisors, where Deputy Ismael worked at an indoor adventure park, Urban Air in Augusta, and then Deputy Ismael was the lead or commanding officer of the "special" and in charge of other Richmond County Deputies providing security at the "special.

16.

Among the officers who the Department assigned to the "special" supervised by lead or commanding deputy, Deputy Ismael, was Defendant Captain Jenkins, even though in Jenkins' role at Richmond County Sheriff's Department, Jenkins commanded the SWAT team, and supervised Ismael in Ismael's SWAT Team role.

17.

Deputy Ismael became a member of SWAT Team under Defendant Jenkins' SWAT Team command in the summer 2021.

18.

Captain Jenkins abused his command authority with the Defendant Augusta-Richmond County Sheriff's Department, without constraint by appropriate supervision and discipline as required under the law and Department policy, by

intimidating and harassing Deputy Ismael connected to Plaintiff Ismael's race and national origin, both when they were in the Richmond County Sheriff's Department and the SWAT Team setting, and also at the Urban Air setting of the "special" created and regulated by the agents of the Defendant Sheriff, at Urban Air, where Ismael was purportedly the commanding or lead officer of Defendant Jenkins.

19.

Every time Captain Jenkins and Deputy Ismael worked the same shift at Urban Air or Richmond County, Captain Jenkins referred to Deputy Ismael as a "terrorist," stereotyping Ismael based on his race and national origin in a pejorative manner, as if Ismael did not have equal rights to a workplace free from adverse treatment without regard to race or national origin.

20.

At Urban Air, Defendant Captain Jenkins once told a group of people standing nearby Deputy Ismael that "if you want to see a terrorist's face, look at [Deputy Ismael]."

21.

Captain Jenkins often referred to and linked Deputy Ismael to comments or references about "bombs," referencing national origin and race discrimination: For example, at Richmond County, Defendant Jenkins yelled loudly to a large group of other Officers, "Don't worry guys, he doesn't have a bomb;" and, while at Urban

Air, Jenkins told a group of people that "look out, [Deputy Ismael] might have a bomb."

22.

Although Ismael would ask or direct Captain Jenkins to stop this unwanted harassment, Defendant Jenkins repeatedly told Deputy Ismael that he should "go back to where he came from" and  after a particular attempt to stop harassment, Captain Jenkins told Ismael to "go play in the sand."

23.

These frequent offensive statements were referring to Ismael's Iraqi national origin, race, and/or religious affiliation.

24.

These frequent offensive statements were witnessed by multiple people.

25.

These comments and the related harassment continued on a weekly basis by Captain Jenkins for several months.

26.

After Deputy Ismael passed a physical training course that made him eligible for the SWAT team, in summer 2021 he began training with the SWAT Team, then under the command of Defendant Jenkins.

27.

SWAT Team commander Defendant Captain Jenkins adversely reacted to Deputy Ismael's new SWAT team membership, by treating Plaintiff Ismael more harshly than he did when Whites or persons Jenkins perceived to be good Americans joined the SWAT Team, when Jenkins immediately put Deputy Ismael "on probation," but neither before nor after did Jenkins put Whites, or persons Jenkins perceived to be good Americans, "on probation" when they first became SWAT Team members.

28.

For his SWAT team role Deputy Ismael attended the SWAT academy for full time training, in Forsyth, Georgia, from September 11-17, 2021.

29.

While at SWAT training, Ismael passed a SWAT performance exam.

30.

However, Deputy Ismael did not pass a separate written exam because of incorrectly answering questions and missing two points, but the Forsyth academy SWAT instructor, called Buck, told Deputy Ismael that he would talk to Deputy Ismael's commanding officer (Jenkins) and tell him, "You did good man, let me talk to your commanding officer, I will give you a good reference…you can come back and just re-take the exam."

31.

On September 17, while still at the SWAT academy, Deputy Ismael talked to the Richmond County SWAT Team Sergeant, who was second in command to Jenkins, and told the Sergeant that according Buck, the SWAT trainer, that Ismael could re-test, and Ismael asked the Sergeant to speak with Buck, the SWAT instructor about re-taking the test, and the Sergeant indicated he would.

32.

However, neither Defendant Captain Jenkins nor the Sergeant spoke with Buck, and shortly after Ismael had spoken to the Sergeant, who presumably had talked to his superior officer, Captain Jenkins about a re-test for Ismael, the Sergeant called and said Ismael was "fired off SWAT," without either Jenkins or the Sergeant talking to the SWAT instructor, or otherwise discussing the matter with Deputy Ismael, where plausibly, discovery will show that Whites and African Americans were allowed to retake the SWAT test, and they had the same or more mistake than Plaintiff.

33.

Also, after completing SWAT training on the afternoon of Friday, September 17, 2021, Deputy Ismael was in uniform and drove his police cruiser to return home to Burke County.

34.

Deputy Ismael had completed the day's assigned training and was not assigned to work any further.

35.

On his way home, Deputy Ismael stopped at the Burke County Sheriff's Office to apply for a position, which would require an interview at a later date.

36.

Deputy Ismael and all Richmond County Sheriff's Deputies were allowed by Richmond Sheriff's Department County policies and were encouraged during routine in service training, that they could stop for personal errands, such as getting lunch or groceries, while in uniform and while driving the official cruiser, to show police presence within the community.

37.

Deputy Ismael was aware that using the official vehicle, while in uniform and doing personal errands was a common practice among officers at the Richmond County Sheriff's Department.

38.

During the following week of September 20, 2021, Deputy Ismael filed a formal grievance with Defendant McCarty in the Internal Affairs Department of the Richmond County Sheriff's office regarding the persistent and unwanted offensive

comments and biased treatment and made by Defendant Captain Jenkins in law enforcement settings,  that Ismael perceived to be based on unlawful race or national origin discrimination.

39.

The written attachment to the grievance submitted by Deputy Ismael after September 20, 2021, included the following statement: "Lt. Jenkins made extremely offensive racist remarks toward me. There was not one instance when they were working together at Urban Air when Lt. Jenkins did not refer to me as a terrorist or make some crude remark about sand, bombs, or not being able to speak English and that no one could understand me. If I said something to defend myself, he would tell me to go back to where I came from and 'play in the sand.' He used terminology that made everyone uncomfortable. Every time we worked together."

40.

Deputy Ismael also presented Defendant McCarty with copies of written statements by two management witnesses at Urban Air that corroborated Deputy Ismael's complaint that Defendant Jenkins was frequently and publicly calling him a "terrorist" and making other statements such as those discussed above in Paragraphs 19-25.

41.

Internal Affairs Investigator Defendant McCarty, who had a duty to investigate violations of law, including those prohibiting discrimination,  said he would "contact [Deputy Ismael]  back" about this grievance, but never did, and neither Defendants McCarty nor Chew sought to interview the Urban Air witnesses who gave the written statements corroborating Deputy Ismael allegation of racial harassment, no one from Richmond County interviewed any witness about this grievance, and neither Defendant Sheriff nor supervisors disciplined Captain Jenkins about the complained-of, race related, hostile and widely witnessed conduct.

42.

Instead, Defendants Roundtree, McCarty and Chew sought to protect Defendant Jenkins, and schemed to pretextually implement the County's policy that a grievance need not be investigated if the complainant (Deputy Ismael) no longer worked for Richmond County, by setting up a termination process that would take effect before Defendants Roundtree, McCarty or Chew began or completed the pre-existing and related investigation about racial harassment of Deputy Ismael, where Ismael's complaints or allegations of racial harassment were backed by statements of independent witnesses, and the Defendants were aware that the allegations were substantially likely to be proven true, requiring discipline of Defendant Jenkins, in

this sensitive and dangerous law enforcement setting, where lack of trust can be life-threatening.

43.

Defendants knew that the existence of the corroborating witness statements from independent, out of department, third parties (see above, Par. 40) meant that the grievance was serious, and that if they investigated in good faith, it should and would result in serious consequences adverse to Jenkins' employment for Jenkins' discriminatory behavior against a subordinate law enforcement police officer.

44.

Accordingly, with or without Jenkins' behest and urging, Defendants McCarty, Chew and Roundtree sought to take advantage of the County policy that a complaint need not be investigated if the complaining party were already or had been terminated before the investigation were complete (above Par. 42), so between September 20-28, 2021, Defendants Jenkins, McCarty, Chew and Roundtree conspired and together concocted a plan to create false pretextual reasons to terminate Deputy Ismael, in retaliation for Ismael's provable and recent grievance about Defendant Captain Jenkins' racially hostile remarks, that should have been addressed soon after the complaint was filed, if law and policies against unlawful discrimination and harassment had been followed.

15

45.

First, Defendants McCarty and Chew concocted that they had received an "anonymous tip" regarding Deputy Ismael stopping at Burke County to apply for a position while on duty the afternoon of September 17, which was false.

46.

Defendants McCarty and Chew knew that when Deputy Ismael stopped to apply at Burke County Sheriff's Department, that Ismael was off duty after the SWAT training in Forsythe, and on his way home, even though he was wearing his uniform and driving the patrol car, but McCarty and Chew either concealed or falsified the correct information, as if Ismael had been on duty, or otherwise done something wrong, by trying to apply for work to get away from a Department that tolerated racial and religious discrimination.

47.

Defendant McCarty took the next step to execute on the pretextual plan, knowing that Ismael would have to have an employment interview, so they called the Burke County Sheriff to confirm the date/time of the employment interview that Deputy Ismael had with Burke County Sheriff's Department.

48.

After learning that the interview was set in Burke County for September 28 (Deputy Ismael's off day) at 12:00 p.m., Defendants McCarty and Chew concocted

a plan to call Deputy Ismael at 11:00 a.m. on the day of the interview, which was also Deputy Ismael's day off, and demand that Ismael report immediately to Internal Affairs in the Augusta-Richmond County Sheriff's Department for a meeting.

49.

Defendants McCarty and Chew, and possibly Defendants Roundtree and Jenkins, purposefully timed the meeting so that it would conflict with the time of Deputy Ismael's Burke County interview and would thus create a pretextual reason to discipline Deputy Ismael for not timely attending the meeting they had intentionally set in Augusta to conflict with the Burke County interview.

50.

Defendants Chew and McCarty executed on this plan, and contacted Deputy Ismael at 11:00 a.m. on September 28, and demanded that Ismael come to the Department in Augusta "immediately".

51.

Deputy Ismael replied that he could not be there "immediately," but that he would be there as soon as possible, in the early afternoon.

52.

Doing his best to comply with the pretextual and retaliatory request, Deputy Ismael arrived for the Internal Affairs meeting in the early afternoon of September 28, 2021.

53.

On September 28, 2021, Defendants Chew and McCarty, in coordination with Defendant Roundtree, in the meeting they intentionally attempted to induce Ismael into false statements, to further support their pretextual, predetermined plan to fire Ismael, using the pretextual reasons connected to stopping to apply for work with Burke County, and for being late for the concocted meeting.

54.

Deputy Ismael did not make any false statements in the meeting on September 28 that Defendants Chew and McCarty, intentionally conducted in bad faith, in coordination with Defendant Roundtree.

55.

On September 28, foreseeably, Defendants Chew and McCarty told Deputy Ismael he was suspended and prepared forms indicating that he was to be fired for the pretextual reasons that Deputy Ismael (a) stopped at Burke County to apply for a job, and (b) failed to "timely" attend the  meeting on September 28, that was "set up."

56.

Defendants Chew, McCarty and Roundtree knew these to be false and/or concocted pretextual reasons, designed to cause the retaliatory termination of Deputy Ismael, where they knew the false reasons for the meeting they set-up on

short notice at a time when they knew Ismael could not be there, even though they knew that a retaliatory termination was a violation of the law and Richmond County Sheriff's Department policies and procedures.

57.

Defendants knew that other similarly situated employees had engaged in or did later engage in comparable action(s) as Deputy Ismael but were not terminated.

58.

When Sheriff Roundtree gave final approval to terminate Deputy Ismael on about October 15, 2021, he was aware of the outstanding unaddressed discrimination grievance reported by Deputy Ismael, and was aware of the concocted/pretextual reason about the meeting  created by Defendants McCarty and Chew, and yet Defendant Roundtree approved and ratified the termination without taking any action to address the pre-existing grievance of Ismael about discrimination, causing purposeful discrimination and retaliation against Ismael.

59.

Without taking action consistent with his duty to prevent discrimination, Sheriff Roundtree stated: "We won't be held hostage by someone who filed a complaint."

60.

When informed of his termination, Plaintiff knew these reasons had a causal connection to his protected activity, because he had not engaged in wrongful behavior, these issues were never raised with him prior to his protected activity, and moreover, other comparable employees who had engaged in personal errands off duty, while in uniform and using the patrol car, were not subject to the same adverse treatment and standards to which Defendants Jenkins and Roundtree held Plaintiff.

61.

After the termination, Defendant McCarty contacted Urban Air and informed them of the termination and stated words to the effect that Deputy Ismael should no longer work at Urban Air, causing Urban Air to fire Deputy Ismael from that job as well.

## <u>COUNT ONE – TITLE VII RETALIATION</u>

Against Title VII Employer - Richmond County
Because Ismael Formally Opposed Jenkins' Discrimination,
Based on Race, Ethnicity, National Origin or Religion,
With Evidence from Independent, Out-of-Department Witnesses,
And though Individual Defendants were Required, They
Refused to Correct SWAT Commander Jenkins' Discrimination,
And Are Covering from Judicial Scrutiny
Their Approved, Ratified or Cats Paw,
Pretextual and Retaliatory Suspension and Termination of Ismael

62.

Plaintiff incorporates the above paragraphs and the factual allegations of  12-61 and incorporates them by reference to this count, where the more particular facts of an allegation are referenced in the related paragraphs below 63-69, 71, 73.

63.

Notwithstanding that deputy serve at the pleasure of the Sheriff, subject to the law, Defendant Richmond County is Deputy Ismael's employer covered under Title VII, because Defendant Richmond County and the Augusta Richmond County Sheriff's Department each has more than 15 employees, and the County pays the deputies. (¶¶ 4, 11, 14).

64.

Deputy Ismael is from Iraq, is a practicing Muslim, and is of Arabic descent but who identifies as White; therefore, he belongs to a protected classes based on race, ethnicity, national origin, and religion, under Title VII. (¶¶ 3, 12, 13).

65.

Deputy Ismael was qualified for his job and performed it satisfactorily, as shown by being lead at a "special" (¶ 15) and being assigned to the SWAT Team, (¶ 15) where the reasons proffered and process followed for the suspension and termination are not legitimate real reasons but are part of the collusion to cause and hide the unlawful suspension and termination from later judicial scrutiny. ( ¶¶ 41-61).

66.

Defendant Jenkins, an African American, and Plaintiff's superior in rank to Ismael within the Sheriff's Department, repeatedly and persistently, over Plaintiff's objection,  (¶ 22) as shown in ¶¶ 18 – 25, used terms connected to Ismael's race, national origin, ethnicity  or religion in a derisive and demeaning manner, at Ismael, in the presence and absence of other deputies, in a security sensitive law enforcement setting upending trust and the legitimacy of the chain of command, altering the terms and conditions of Ismael's position and safety as a deputy. (¶¶ 18 – 25 (hostile comments connected to racial/national origin/ethnicity)).

67.

On account of Plaintiff Ismael's race and national origin, Defendant Jenkins, an African American, placed Ismael on probation for SWAT at inception of his membership (¶ 27) and refused to allow Plaintiff to retake the SWAT test (¶¶ 28-

32), where Jenkins was not or would not have been so similarly harsh to a White or African American.

68.

.    As is the right of any person to a workplace free from discrimination based on race, ethnicity, national origin or harassment for protected opposition, Deputy Ismael engaged in subjectively and objectively reasonable protected oppositional conduct, by filing a grievance, with corroborating statements of independent witness (¶40) during the week of September 20, 2021, (¶¶ 37-40) about the unwanted, persistent, discriminatory behavior of Captain Jenkins, directed at Ismael, that was connected to race, ethnicity, national origin and religion (by way of stereo-typing of race and national origin), as described above in ¶¶ 18 – 25 (hostile racial/national origin comment and responses) and  in ¶¶ 27 – 32 (Americans or African American deputies were or would have been treated more favorable better in the SWAT Team status, and allowed to retake the SWAT test).

69.

Defendant McCarty was given the evidence of protected oppositional conduct about Defendant Jenkins' discriminatory actions during the week of September 20, 2021 (¶¶ 38-40), including statements of independent witness verifying hostile racial comments by Jenkins (¶40), which should have triggered an investigation and immediate discipline of Jenkins, under the employer's duty to reasonably respond to

prevent unlawful employment discrimination and harassment, in violation of violate Title VII, and the Thirteenth and Fourteen Amendments because the Defendants are acting under color of, though not necessarily within the law.

70.

Like other deputies, Ismael was entitled to the job and reputational protection of meaningful progressive discipline, consistent with the manner similarly situated American and African American deputes were treated facing suspension or termination, where the employment decisions would be made by a neutral and fair minded decisionmaker(s) relative to the allegations by the Department, the evidence and application of law, written policy or lawfully applied custom, to also include a *Loudermill* hearing and name clearing hearing.

71.

But instead of investigating and disciplining Jenkins, or providing Ismael procedurally and substantively meaningful process that should and would have protected his job, but-for, or on account of the discrimination and/or retaliation, individually or jointly, Defendant McCarty initiated collusion with Defendants Jenkins, Chew and/or Roundtree, to pull together a plan of pretextual basis and process, with biased decisionmakers to suspend Plaintiff on September 28,  (¶¶ 41-

61) and to then cause his termination through Defendant Roundtree on or about October 15, 2021.

72.

But-for, caused by, or on account of prohibited discrimination and/or retaliation, Defendant Roundtree participated in, or ratified the pretextual retaliatory suspension and termination on about October 15, 2020, or in the alternative, he conducted little investigation and was the Cats Paw for the unlawful motive of Defendants Jenkins, McCarty, and Chew, in causing the suspension and termination.

73.

Ismael engaged in protected oppositional communication to Defendant McCarty during the week of September 20, 2021, (¶¶ 69-70) yet no investigation or discipline of SWAT Team Commander Jenkins occurred that should have occurred, and instead, one or more of Defendants McCarty, Jenkins and Chew acted individually or jointly to cause the pre-textual suspension on about September 28, (¶ 71) leading to the termination on or about October 15, by Defendant Sheriff Rountree in his individual and official capacity, in the alternative, personally ratified the retaliatory termination, was deliberately indifferent to the truth, or was a Cats Paw for one or more of the Defendants McCarty, Jenkins and Chew.

74.

Richmond County retaliated against Plaintiff because Plaintiff engaged in statutorily protected oppositional activity, which is prohibited by Title VII of the Civil Rights Act of 1964 and is actionable thereunder.

75.

Because of or due to Richmond County's unlawful actions, Plaintiff was injured and is therefore entitled to all damages allowed by law (including attorneys' fees and expenses of litigation) in an amount to be shown and determined at trial.

## COUNT TWO — RETALIATION

## ACTIONABLE UNDER 42 U.S.C. § 1983

Against All Individual Defendants
For Violating, or Refusing to Enforce Equal Protection of the
the Thirteenth and Fourteenth Amendments' Clear Law
that Prohibits Discrimination,
Based on Race, Ethnicity, National Origin or Religion,
By Causing a Pretextual, Retaliatory Suspension and Termination,
Under Color of, though Not Within the Law

76.

Plaintiff incorporates the above paragraphs and the factual allegations of 12-61 and incorporates them by reference to this count, where the more particular facts of an allegation are referenced in the related paragraphs below ¶¶ 80, 12, 85-87.

77.

Defendants McCarty, Jenkins, Chew and Sheriff Roundtree are law enforcement officers who were acting under color of state law within the Sheriff's Department of Richmond County, who are required by law to enforce the United States Constitution and other Federal laws consistent with due process and equal protection.

78.

In 2020 the law was clearly established that the Thirteenth and Fourteenth amendments prohibited persons acting under color of law from causing

discrimination, based on race, ethnicity, national origin, or religion, through intentional action or inaction, in state related employment

79.

As officials acting with state authority in 2020, Defendants  McCarty, Jenkins, Chew and Sheriff Roundtree were clearly prohibited by the Thirteenth and Fourteenth amendments from using their authority under color of law to discriminate against Plaintiff Deputy Ismael based on his race, ethnicity, national origin, or religion, through intentional action or inaction.

80.

Plaintiff Ismael was of Arabic descent, born and raised in Iraq and a practicing Muslim, facts which he widely and openly shared with other Deputies, where his non-White, and non-African American appearance is obvious, and his accent is middle eastern, not of a commonly recognized American lilt. (See ¶ 12).

81.

Plaintiff Ismael had a life, liberty, or property interest in maintaining his employment as a Richmond County Deputy; that included a progressive discipline schema and a hearing and appeal process, free from terms and conditions of employment by unlawful discrimination arbitrarily burdened on account of his race, national origin, ethnicity, or religion, because of the intentional action or inaction of one or more the individual Defendants.

28

82.

The individual Defendants, McCarty, Jenkins, Chew and Sheriff Roundtree, were Americans by birth, and either White or African American.

83.

None of the individual Defendants were of Arabic descent, born and raised in Iraq nor a practicing Muslim.

84.

Plaintiff incorporates ¶¶ 18-25; 66-67 above, showing that Defendant Jenkins, an African American, repeatedly, and persistently subjected Plaintiff to discriminatory harassment and adverse treatment on account of Ismael's race, national origin, ethnicity, or religion in connection with the Richmond County law enforcement employment connection among Plaintiff and all individual Defendants.

85.

During the week of September 20, 2021, Plaintiff engaged in protected activity under the First, Thirteenth and Fourteenth amendments, when he formally complained to Defendant McCarty about Defendant SWAT Commander Jenkins ' repeatedly and persistently subjecting Plaintiff to discriminatory harassment and adverse treatment on account of Plaintiff' race, national origin, ethnicity and

religion, that was confirmed by statements of two independent witnesses, (¶ 40) as referenced in  (¶¶ 37-40) as if fully stated herein. (See ¶¶ 68-69).

86.

Instead of disciplining or even investigating Defendant Jenkins, to stop his unlawful discrimination under color of law, Defendant McCarty individually or jointly with one or more of the other Defendants, Jenkins, Chew and/or Roundtree pulled together a plan of pretextual basis and process, with biased decisionmakers to suspend Plaintiff on September 28, (¶¶ 41-61), to then cause the  challenged termination through Defendant Roundtree on or about October 15,  2021. (See ¶¶ 70-71).

87.

But-for, caused by, or on account of prohibited discrimination and/or retaliation,  Defendant Roundtree participated in, or ratified the pretextual retaliatory suspension and termination on about October 15, 2020, or in the alternative, he conducted little investigation and was the Cats Paw for the unlawful motive of  Defendants Jenkins, McCarty, and Chew in causing the suspension and termination.

88.

Defendant McCarty individually or jointly, with one or more of the other Defendants, Jenkins, Chew and/or Roundtree, acting under color of law,

discriminated against Plaintiff Ismael in violation of the First, Thirteenth and Fourteenth amendments, on account of Ismael's race, national origin, ethnicity or religion, or Ismael having engaged in protected opposition to unlawful discrimination protected by the First, Thirteenth and Fourteenth amendments, with one or more individual Defendants jointly causing the challenged suspension and termination, depriving plaintiff federally protected rights and causing him injury, which is actionable under 42 U.S.C. § 1983.

89.

Because of or due to Richmond County's unlawful actions, Plaintiff was injured and is therefore entitled to all damages allowed by law (including attorneys' fees and expenses of litigation) in an amount to be shown and determined at trial.

31

## COUNT THREE — UNDER 42 U.S.C. § 1985(3)

Against All Individual Defendants
For conspiring to deprive Ismael of the equal protection of the laws in employment
on account of Race, Ethnicity, National Origin or Religion,
or for hindering one or more of the other individual Defendants,
or other unknown Department members,
from securing to Plaintiff equal protection of the laws
By Causing a Pretextual, Retaliatory Suspension and Termination,
Under Color of, though Not Within the Law

90.

Plaintiff incorporates the above paragraphs and the factual allegations of 12-61 and incorporates them by reference to this count, where the more particular facts of an allegation are referenced in the related paragraphs below: ¶¶ 92, 94, 95, 96.

91.

Defendants McCarty, Jenkins, Chew and Sheriff Roundtree were clearly prohibited by the Thirteenth and Fourteenth amendments, Title VII and 42 U.S.C. § 1981 from conspiring to discriminate against Plaintiff, fellow Deputy Ismael in his employment, based on his race, ethnicity, national origin, or religion, through intentional action or inaction.

92.

Plaintiff Ismael was of Arabic descent, born and raised in Iraq and a practicing Muslim, facts which he widely and openly shared with other Deputies, where his non-White, and non-African American appearance is obvious, and his accent is middle eastern, not of a commonly recognized American lilt. (See ¶ 12).

93.

Plaintiff Ismael had a Constitutional right and statutorily based to be free from terms and conditions of employment burdened by unlawful discrimination on account of his race, national origin, ethnicity, or religion, because of the intentional action or inaction of one or more the individual Defendants.

94.

Plaintiff incorporates ¶¶ 18-25; 66-67 above, showing that Defendant Jenkins, an African American, repeatedly, and persistently subjected Plaintiff to discriminatory harassment and adverse treatment on account of Ismael's race, national origin, ethnicity, or religion in connection with the Richmond County law enforcement employment connection among Plaintiff and all individual Defendants.

95.

During the week of September 20, 2021, Plaintiff engaged in protected activity under the First, Thirteenth and Fourteenth amendments, when he formally complained to Defendant McCarty about Defendant SWAT Commander Jenkins ' repeatedly and persistently subjecting Plaintiff to discriminatory harassment and adverse treatment on account of Plaintiff' race, national origin, ethnicity and religion, that was confirmed by statements of two independent witnesses, (¶ 40) as referenced in  (¶¶ 37-40) as if fully stated herein. (See ¶¶ 68-69).

96.

Instead of disciplining or even investigating Defendant Jenkins, to stop his
unlawful discrimination under color of law, Defendant McCarty individually or
jointly with one or more of the other Defendants, Jenkins, Chew and/or Roundtree
conspired by pulling together a plan of pretextual basis and process, with biased
decisionmakers to suspend Plaintiff on September 28, (¶¶ 41-61), to then cause the
challenged termination through Defendant Roundtree on or about October 15,
2021. (See ¶¶ 70-71).

97.

But-for, caused by, or on account of prohibited discrimination and/or
retaliation,  Defendant Roundtree participated in, or ratified the pretextual
retaliatory suspension and termination on about October 15, 2020, or in the
alternative, he conducted little investigation and was the Cats Paw for the unlawful
motive of  Defendants Jenkins, McCarty and Chew in causing the suspension and
termination, to deny Plaintiff equal treatment under the law.

98.

Defendant McCarty individually or jointly, with one or more of the other
Defendants, Jenkins, Chew and/or Roundtree, conspired to discriminate against
Plaintiff Ismael in violation of the First, Thirteenth and Fourteenth amendments, on
account of Ismael's race, national origin, ethnicity or religion, and because Ismael

engaged in protected opposition to unlawful discrimination thereby seeking equal

treatment under the law, where two or more of the individual Defendants prevented

or hindered other deputies, or the Sheriff from protecting Plaintiff's rights,  jointly

causing the challenged suspension and termination, depriving plaintiff federally

protected rights or privileges, and causing him damages and injury, which is

actionable under 42 U.S.C. § 1985(3).

99.

Because of or due to Richmond County's unlawful actions, Plaintiff was

injured and is therefore entitled to all damages allowed by law (including

attorneys' fees and expenses of litigation) in an amount to be shown and

determined at trial.

## <u>COUNT FOUR — UNDER 42 U.S.C. § 1986</u>

Against All Individual Defendants
For Individually or in Conspiracy Depriving Ismael of equal protection of the laws
on account of Race, Ethnicity, National Origin or Religion,
or for Hindering One or More of  the Other Individual Defendants,
or Other Unknown Department Members,
from Securing to Plaintiff Equal Protection of the Laws
by Knowingly Not Stopping the Pretextual,
Retaliatory Suspension and Termination

100.

Plaintiff incorporates the above paragraphs and the factual allegations of  12-

61 and incorporates them by reference to this count, where the more particular facts

of an allegation are referenced in the related paragraphs below: ¶¶ 103-06.

101.

Defendants  McCarty, Jenkins, Chew and Sheriff Roundtree were clearly

prohibited by the Thirteenth and Fourteenth amendments, Title VII and 42 U.S.C.

§ 1981 from individually or in conspiracy with one or more others to conspire to

discriminate against Plaintiff, fellow Deputy Ismael, in his employment, based on

his race, ethnicity, national origin or religion, through intentional action or

inaction.

102.

Defendants  McCarty, Jenkins, Chew and Sheriff Roundtree knew, or can be

shown to have known, or should have known,  that it was unlawful to conspire to

36

cause a suspension or termination on account of race, ethnicity, national origin, or religion.

103.

Defendants  McCarty, Jenkins, Chew and Sheriff Roundtree knew that Plaintiff Ismael was of Arabic descent, born and raised in Iraq and a practicing Muslim, facts which he widely and openly shared with other Deputies, where his non-White, and non-African American appearance is obvious, and his accent is middle eastern, not of a commonly recognized American lilt. (See ¶ 12).

104.

Plaintiff incorporates ¶¶ 18-25; 66-67 above, showing that Defendant Jenkins, an African American, repeatedly, and persistently subjected Plaintiff to discriminatory harassment and adverse treatment on account of Ismael's race, national origin, ethnicity, or religion in connection with the Richmond County law enforcement employment connection among Plaintiff and all individual Defendants.

105.

During the week of September 20, 2021, Plaintiff engaged in protected activity under the First, Thirteenth and Fourteenth amendments, when he formally complained to Defendant McCarty about Defendant SWAT Commander Jenkins ' repeatedly and persistently subjecting Plaintiff to discriminatory harassment and

adverse treatment on account of Plaintiff' race, national origin, ethnicity and religion, that was confirmed by statements of two independent witnesses, (¶ 40) as referenced in  (¶¶ 37-40) as if fully stated herein. (See ¶¶ 68-69).

106.

Instead of protecting Plaintiff from unlawful discrimination, by disciplining or even investigating Defendant Jenkins, to stop his unlawful discrimination Defendant McCarty individually or jointly with one or more of the other Defendants, Jenkins, Chew and/or Roundtree conspired by pulling together a plan of pretextual basis and process, with biased decisionmakers to suspend Plaintiff on September 28, (¶¶ 41-61), to then cause the challenged termination through Defendant Roundtree on or about October 15,  2021. (See ¶¶ 70-71).

107.

Knowing of the conspiracy to deprive Plaintiff of equal treatment under the law, one or more of the Defendants McCarty, Jenkins, Chew and/or Roundtree, had power to prevent or aid in preventing the unlawful suspension and termination, but neglected or refused to prevent the same, where reasonable diligence could have prevented the suspension and termination.

108.

Knowing of the conspiracy to deprive Plaintiff of equal treatment under the law, one or more of the Defendants McCarty, Jenkins, Chew and/or Roundtree,

had power to prevent or aid in preventing the unlawful suspension and termination, where one or more of the Defendants McCarty, Jenkins, Chew and/or Roundtree, prevented or hindered one or more other Deputies or the Sheriff from securing Plaintiff equal protection under the law, but neglected or refused to prevent the same, where reasonable diligence could have prevented the suspension and termination.

109.

Sheriff Roundtree, or others were the Cats Paw,  for the unlawful motive of Defendants Jenkins, McCarty, and Chew, in causing the suspension and termination, to deny Plaintiff equal treatment under the law, by failing to prevent or hindering the Sheriff from causing the suspension and termination.

110.

Because of or due to Richmond County's unlawful actions, Plaintiff was injured and is therefore entitled to all damages allowed by law (including attorneys' fees and expenses of litigation) in an amount to be shown and determined at trial.

## **<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief:

a.  A trial by jury, pursuant to Federal Rule of Civil Procedure 38(b);

b.  Find that Defendant Richmond County is liable to Plaintiff for its Title VII retaliation for at least back pay, prejudgment interest, reinstatement or front pay, and further relief appropriate under law and in an amount to be determined at trial;

c.  Damages for injuries caused by deprivation rights under federal law;

d.  Compensatory damages as allowed by law for deprivation of rights under federal law;

e.  Punitive damages as allowed by law for deprivation rights under federal law;

f.  Award Plaintiff his reasonable attorneys' fees and expenses of litigation; and

g. Any and other such relief that this Honorable Court or the Finder of Fact

deems equitable and just.

Respectfully submitted this 14th day of August 2022.

> By:    /s/ John P. Batson
> John P. Batson
> Georgia Bar No. 042150
> Law Offices of John P. Batson
> 1104 Milledge Road
> Augusta, GA 30904
> Tel: (706) 737-4040
> Facsimile:
> Email: jpbatson@aol.com
> *Attorneys for Plaintiff*

Pro Hac Vice Pending
Douglas R. Kertscher
Georgia State Bar No. 416265
John N. Mahaffey
Georgia State Bar No. 222671
**HILL, KERTSCHER &**
**WHARTON, LLP**
3625 Cumberland Boulevard SE, Suite 1050
Atlanta, Georgia 30339
Tel: (770) 953-0995
Facsimile: (770) 953-13581
Email: drk@hkw-law.com
jm@hkw-law.com

*Attorneys for Plaintiff*