## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | |
|---|---|
| **AHMED S. ISMAEL,** | CIVIL ACTION FILE NO.: |
| Plaintiff, | |
| | 1:22-cv-108 |
| **vs.** | |
| | **JURY TRIAL DEMANDED** |
| **SHERIFF RICHARD ROUNDTREE,** in his individual and official capacity as Sheriff of Richmond County, | |
| | COMPLAINT |
| **SGT. WILLIAM MCCARTY**, in his individual capacity acting under color of law as a supervisor of the Richmond County Sheriff's Office, and | DAMAGES |
| **COL. CALVIN CHEW**, in his individual capacity acting under color of law as a supervisor of the Richmond County Sheriff's Office. | |
| Defendants. | |

## SECOND AMENDED COMPLAINT

COMES NOW, Plaintiff Ahmed S. Ismael (hereinafter "Deputy Ismael" or "Plaintiff") and hereby files this Second Amended Complaint against Defendants Sheriff Richard Roundtree, Sgt. William McCarty, and Col. Calvin Chew (collectively "Defendants"), pursuant to Fed. R. Civ. P. 15(a)(2), and respectfully shows the Court the following:

# FACTS UNCOVERED IN DISCOVERY

## 1.

Deputy Ismael, a Muslim of Arabic descent born in Iraq, a veteran of the Iraqi Army whom served alongside United States Army troops, was terminated on September 28, 2021 from his position as Deputy in retaliation for Ismael's filing of an internal affairs complaint, on September 20, 2021, alleging national origin and race discrimination against defendant Captain Everette Jenkins. Defendant Jenkins was a twenty-three (23) year "good friend" with Sheriff Roundtree, and is Sheriff Roundtree's former investigative partner.

## 2.

The September 20, 2021 internal affairs complaint submitted by Deputy Ismael included two separate witness statements created by and signed by private citizens William Gilbert and Jordan Chambliss. Gilbert and Chambliss were on duty managers at a "special," called Urban Air in Augusta. Jenkins' harassment occurred predominantly at this "special," which was a private business where Richmond County Deputies are assigned to provide on-site security for extra pay, as approved, controlled and regulated by the Defendant Sheriff and the Sheriff's supervisors. These written statements by private citizens corroborated Deputy Ismael's allegations of national origin/race discrimination, Ms. Chambliss stating that Jenkins made "extremely offensive racist remarks towards him" and that "there was not one

instance when they were working together at Urban Air when Lt. Jenkins did not refer to him as a terrorist, or make some crude remark about sand, bombs or not being able to speak English and that no one could understand [Jenkins]." Mr. Gilbert wrote that "I've also heard Lt. Jenkis call Ismael a 'terrorist', and say 'watch out, he might have a bomb.' I have witnessed other insensitive and racist remarks being spoken abut Ismael as well…[Lt. Jenkins]…speaks to and about his supervisor in a way that is considered offensive and insensitive."

<center>3.</center>

The private citizens also on September 20, 2021 alleged wage theft or theft of services in violation of O.C.G.A. 16-8-5, against [then] Lt. Jenkins. Ms. Chambliss wrote: "…[he] was late to almost every shift…he left the special … an hour before he was supposed to leave…Yet every time this happened he would demand the same payment, and he threatened Deputy Ismael that if he were not paid in full (for time he was not present), [Ismael] would regret it." Mr. Gilbert wrote: "Lt. Jenkins had the expectation to be paid his full pay for the evening, even when missing hours of his shift."

<center>4.</center>

On September 20, 2021 an internal affairs complaint and private citizen witness statements were submitted to Defendant McCarty. Defendant McCarty did not interview or make a good faith attempt to interview either of the private citizens,

nor did anyone else at the Richmond County Sheriff's department. Defendant McCarty did not ask Lt. Jenkins about the wage theft allegations. The Sheriff's department did not ask to examine Lt. Jenkins' relevant text messages or pay records, and only interviewed "witnesses" who were not identified as witnesses by Deputy Ismael and who were current officers and long-time friends or colleagues with Lt. Jenkins.

5.

Defendant McCarty's "investigation" into Lt. Jenkins was conducted in bad faith, and was ordered to be closed by the head of Internal Affairs on the day that Ismael was fired. Lt. Jenkins was promoted to Captain in June 2022.

6.

Deputy Ismael was terminated on pretextual grounds because of his September 20, 2021 internal affairs complaint. Deputy Ismael had received a positive written evaluation in December 2020 stating that he was an employee in good standing when he submitted his internal affairs complaint against (then) Lt. Jenkins to Defendant McCarty on September 20, 2021. Defendant McCarty verbally made Defendants Chew and Roundtree aware of Dep. Ismael's Internal Affairs complaint on the same day, September 20, 2021.

7.

On September 23, 2021, Defendant McCarty received an email from his friend and former Richmond County officer, Jimmy Wylds. Officer Wylds was and is currently employed as an officer with the Burke County Sherrif's Department. Officer Wylds inquired via email "What do you know about Ahmed Ismael?" Defendant McCarty forwarded the inquiry at 11:55 a.m. to his supervisor Glen Rahn, saying only "Lookie here." Approximately one minute later, supervisor Rahn forwarded this email to Defendant Chew. Shortly thereafter, at 1:32 p.m., Defendant McCarty and his supervisor Rahn exchanged an email about what documents Lt. Jenkins would need to provide (include a single text message) to clear himself of Dep. Ismael's complaint.

8.

The following day, Friday September 24, Defendant McCarty responded to Burke County Jimmy Wyld's inquiry about Plaintiff Ismael, saying that "…So he [Ismael] has filed a complaint against Jenkins claiming hostile work environment among other things which I am having to deal with …. Discipline wise, he is ok…*so far*." [emphasis added].

9.

Sometime before between Thursday September 23 and Monday September 27, Defendant McCarty learned from Wylds that Dep. Ismael had earlier (on

September 17) stopped by the Burke County Sheriff's office to inquire about employment there. Defendant McCarty knew that this was not a problem because on Friday, September 17 Ismael had been released on Friday afternoon from training in far-away Forsyth, Ga. (2.5 hours away) and was travelling home. Defendant McCarty knew that once released from off-site training, and returning home, Richmond County officers were effectively off duty and free to pursue personal errands like visiting the grocery store. (McCarty deposition, pg. 26-27). Deputy Ismael and all Richmond County Sheriff's Deputies were allowed by Richmond County Sheriff's Office while off duty to stop for personal errands, such as getting lunch or groceries, while in uniform and while driving the official cruiser, to show police presence in the community.

10.

However, Defendant McCarty claimed that this was somehow a rule violation in the termination form he prepared for Ismael on September 28, 2021. The "rule" that Defendant McCarty wrote was violated was Rule 4.4 "Manner of Conduct," which states that "An off-duty officer will not conduct themselves in a manner as to reflect discredit upon the Sherrif's office." Defendants McCarty, Chew and Roundtree all signed and approved of the termination form, but none could explain what Dep. Ismael did that "reflect[ed] discredit upon the Sheriff's office."

11.

On the contrary, Dep. Ismael had stopped by the Burke County Sheriff's office for less than ten (10) minutes during the 2.5-hour drive home, and had acted professionally while there (Defendants had no information to the contrary), during which time he was off duty and had no duties to the Richmond County Sherrif's office.

12.

Defendant Chew participated in the creation of the pretext to retaliate against Dep. Ismael. Defendant Chew claimed that he received an "anonymous" phone call on the morning of Monday September 27, 2021, prior to 8:31 a.m. However, Defendant Chew's phone records do not corroborate any such phone call. Defendant Chew claimed that the anonymous caller disclosed that Dep. Ismael had stopped by the Burke County Sherif's office to apply for a job on September 17. This "anonymous" call did not occur, and instead was a ruse serving two purposes: a) to hide Jimmy Wyld's disclosure of the Dep. Ismael's visit to Defendant McCarty, and b) to initiate an internal affairs investigation into Dep. Ismael, accusing him of engaging in personal errands while he was "on county time," when, to the contrary, Defendants McCarty and Chew knew that Ismael had been off duty and driving home from far away off-sight training.

13.

Jimmy Wyld also disclosed to Defendant McCarty that Dep. Ismael had been scheduled for an interview at the Burke County Sherrif's office at approximately noon on Tuesday, September 28. Defendant McCarty's phone records show calls to the Burke County Sheriff's office on the morning of September 28.

14.

Aware of this interview, Defendant McCarty called Dep. Isamel on September 28 at 11:00 a.m. and told him that he needed to report to the Richmond County Sherrif's office to meet with internal affairs "as soon as [you] can." Dep. Ismael was not told the purpose of the pretextually rushed meeting or that he was even under investigation.

15.

Defendant McCarty knew that this instruction would conflict with scheduled interview at Burke County, and knew that the need to get to Richmond County immediately after the interview would cause Dep. Ismael to attend the interview in uniform and in his police issued vehicle.

16.

Just one hour after instructing Dep. Ismael to come in "as soon as you can" for an interview, Defendant McCarty's supervisor in Internal Affairs wrote an email

at 12:21 p.m. on September 28 to Defendants Roundtree and Chew: "Just confirmed that Deputy Ishmael [sic] was in Burke County in our vehicle doing an interview to be hired. He will not be hired and will have the DR [disciplinary report] for termination ready by the time we finish talking with him."

17.

The disciplinary report for termination referred to in Supervisor Rahn's email stated that he was being fired in part because though he did not come immediately to Richmond County and instead that he was "currently at the Burke County Sheriff's Department" and that "it was also discovered that he was operating his Richmond County sheriff's vehicle" while at Burke County. But Defendant McCarty knew that these events occurred only because he had caused it to occur by setting up an artificial conflict with the Burke County interview by instructing Deputy Ismael to come to the station "as soon as you can." And because Dep. Ismael was off duty when he went for the interview, he did not violate any County rules. This did not matter to Defendants.

18.

Accordingly, the (pretextual) decision to terminate Dep. Ismael was made before he was interviewed about the Burke County interviews or before he was even made aware of any "investigation" into him. He was not given any chance to explain that he had acted fully within the rules, because it was irrelevant to Defendants

whether he acted within the rules or not.  They had previously decided to fire him in retaliation for his complaint of national origin/race discrimination against the Sherrif's long-time friend and partner, Lt. Jenkins, and the events at Burke County were merely a poor attempt to create a legitimate reason to fire Ismael where one did not otherwise exist.

## 19.

Defendant Roundtree was apprised "verbally…of everything" by Defendants Chew and McCarty, and he testified that he reviewed "everything".  He agreed to fire Dep. Ismael without asking any questions or doing any independent investigation.  He did this because he wanted Ismael fired in retaliation for Isamel's complaint (the prior week) against his long-time friend and partner, then Lt. Jenkins.

## 20.

Also on September 28, Internal Affairs Supervisor Rahn emailed to Defendant McCarty that he was to "make sure the Everett [Jenkins] case [e.g. Ismael's complaint] gets done before you leave for vacation."  After Dep. Ismael's firing, there was no further "investigation" done into his complaint against (then) Lt. Jenkins, and a conclusory, one-sided and bad faith report containing false information was created to give the appearance that a good faith investigation had been done.

21.

Plaintiff brings this action against Defendants for retaliation for opposition to race or national origin discrimination in employment, and for deprivations of federal rights under 42 U.S.C. §§ 1981 and 1983, under the jurisdictional authority of 28 U.S.C. §§ 1331 and 1343(a)(1-4) for these federal civil rights claims.

## PARTIES, JURISDICTION, AND VENUE

22.

Plaintiff was born in Iraq and is a practicing Muslim of Arabic descent, was a Richmond County Sheriff's Office Deputy from approximately March 21, 2020, to September 28, 2021, and as such was an employee of Sheriff Richard Roundtree in his Official Capacity, who is the Plaintiff's employer. Plaintiff resides in Burke County.

23.

Sheriff Richard Roundtree, in his Official Capacity, and controlled the terms of Plaintiff's employment. Upon information and belief, as Sheriff of Richmond County, Sheriff Roundtree has final responsibility for the supervision and hiring, promotion, and termination decisions of all employees of the Richmond County Sheriff's Office, including deputies.

24.

Sheriff Richard Roundtree, an African American, is sued in his official and individual capacities as a policymaker and supervisor for actions and/or inactions taken under color of law, though not necessarily within the law, as Sheriff of Richmond County.

25.

Sgt. William McCarty, White, is sued in his individual capacity for actions and/or inactions taken under color of law, though not necessarily within the law, as a senior supervisor with the Richmond County Sheriff's Office.

26.

Col. Calvin Chew, an African American, is sued in his individual capacity for actions and/or inactions taken under color of law, though not necessarily within the law, as a senior supervisor with the Richmond County Sheriff's Office.

27.

This Court has subject matter jurisdiction over Plaintiff's claims against Defendants for retaliation for opposition to race discrimination in public employment and for deprivations of federal rights under 42 U.S.C. §§ 1981 and 1983, under the jurisdictional authority of 28 U.S.C. §§ 1331 and 1343(a)(1-4), where venue is proper under 28 U.S.C. § 1391(b) and (c).

## Count 1 — Against All Defendants for Unlawful Retaliation, in violation of 42 U.S.C. § 1981, enforceable via 42 U.S.C. § 1983

28.

Plaintiff incorporates the above paragraphs and the factual allegations and incorporates them by reference to this count.

29.

Defendants McCarty, Chew, and Sheriff Roundtree are law enforcement officers who were acting under color of state law within the Sheriff's Department of Richmond County, who are required by law to enforce the United States Constitution and other Federal laws consistent with due process and equal protection.

30.

In 2021 the law was clearly established that under Supreme Court and Eleventh Circuit precedent that retaliating against an employee for making race-based complaints violated the law. *Bowman v. Birmingham, City of*, 777 F. App'x 416, 418–19 (11th Cir. 2019).

31.

At the time of Dep. Ismael's retaliatory termination, the law was clearly established that § 1981's protection extends to prohibiting retaliation against a party who has filed a formal complaint charging racial discrimination.

32.

At the time of Dep. Ismael's retaliatory termination, the law was clearly established that although § 1981 does not provide an implicit cause of action against state actors, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981. *Bryant v. Jones*, 575 F.3d 1281, 1288 (11th Cir. 2009).

33.

As officials acting with state authority in 2021, Defendants McCarty, Chew, and Sheriff Roundtree were clearly prohibited by § 1981 from using their authority under color of law to retaliate against Plaintiff Deputy Ismael for making a complaint based on racial discrimination.

34.

Plaintiff Ismael was of Arabic descent, born and raised in Iraq and a practicing Muslim, facts which he widely and openly shared with other Deputies, where his non-White, and non-African American appearance is obvious, and his accent is middle eastern, not of a commonly recognized American lilt.

35.

The individual Defendants, McCarty, Jenkins, Chew and Sheriff Roundtree, were Americans by birth, and either White or African American. None of the individual Defendants were of Arabic descent.

36.

Lt. Jenkins, an African American, repeatedly, and persistently subjected Plaintiff to discriminatory harassment and adverse treatment on account of Ismael's race, in connection with the Richmond County law enforcement employment.

37.

Defendants McCarty, Chew and Roundtree conspired and together concocted a plan to create false pretextual reasons to terminate Deputy Ismael, in retaliation for Ismael's provable and recent grievance about Lt. Jenkins' racially hostile remarks, that should have been addressed soon after the complaint was filed, if law and policies against unlawful discrimination and harassment had been followed.

38.

All Defendants knew that when Deputy Ismael stopped to apply at Burke County Sheriff's Department, that Ismael was off duty and returning home after far away offsite training, and that he was allowed to undertake personal errands even though he was wearing his uniform and driving his patrol car. But Defendants conspired to act and suggest as though Dep. Ismael had done something wrong so as

to create a pretextual reason to terminate him, seven (7) days after his complaint against Lt. Jenkins.

<div align="center">39.</div>

Defendant McCarty further executed on the pretextual plan, knowing that Ismael would have to have an employment interview and the date and time of same. Defendants McCarty and Chew concocted a plan to call Deputy Ismael at 11:00 a.m. on the day of the interview, which was also Deputy Ismael's day off, and demand that Ismael report immediately to Internal Affairs in the Augusta-Richmond County Sheriff's Department for a meeting. Defendants purposefully timed the meeting so that it would conflict with the time of Deputy Ismael's Burke County interview and would thus create a pretextual reason to discipline Deputy Ismael for not timely attending the meeting they had intentionally set in Augusta to conflict with the Burke County interview.

<div align="center">40.</div>

Defendants Chew, McCarty and Roundtree knew the proffered reason for termination to be false and/or concocted pretextual reasons, designed to cause the retaliatory termination of Deputy Ismael, where they knew the false reasons for the meeting they set-up on short notice at a time when they knew Ismael could not be there, even though they knew that a retaliatory termination was a violation of the law and Richmond County Sheriff's Department policies and procedures.

41.

Defendants knew that other similarly situated employees, such as Lt. Jenkins and the accusation by private citizens that he engaged in wage theft or theft of services, had engaged in in even worse action(s) as Deputy Ismael, but he was not disciplined or terminated. Moreover, other comparable employees who had engaged in personal errands off duty, while in uniform and using the patrol car, were not subject to the same adverse treatment and standards to which Defendants Jenkins and Roundtree held Plaintiff.

42.

When Sheriff Roundtree gave final approval to terminate Deputy Ismael, he was aware of the outstanding unaddressed discrimination grievance reported by Deputy Ismael, and was aware of the concocted/pretextual reason about the meeting created by Defendants McCarty and Chew, and yet Defendant Roundtree approved and ratified the termination without taking any action to address the pre-existing grievance of Ismael about discrimination, causing purposeful discrimination and retaliation against Ismael.

43.

Without taking action consistent with his duty to prevent discrimination, Sheriff Roundtree stated: "We won't be held hostage by someone who filed a complaint."

44.

After the termination, Defendant McCarty closed the bad faith "investigation" in Deputy Ismael's complaint without interviewing the private citizens (or anyone other than the longtime friends or colleagues of Lt. Jenkins), further evidencing the Defendants' bad faith and pretextual intend in firing Deputy Ismael.

45.

Urban Air refused to hire Deputy Ismael to work private security at its location after he was fired from Richmond County Sheriff's department, because of said termination.

46.

Defendant McCarty individually or jointly, with one or more of Defendants Chew and/or Roundtree, acting under color of law, on account of Ismael having engaged in protected opposition to unlawful discrimination because of his race, with one or more individual Defendants jointly causing the challenged suspension and termination, depriving plaintiff federally protected rights and causing him injury in violation of 42 U.S.C. § 1981, which is actionable against state actors under 42 U.S.C. § 1983.

<div align="center">47.</div>

Because of or due to Defendants' unlawful actions, Plaintiff was injured and is therefore entitled to all damages allowed by law (including attorneys' fees and expenses of litigation) in an amount to be shown and determined at trial.

<div align="center">**PRAYER FOR RELIEF**</div>

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief:

a. A trial by jury, pursuant to Federal Rule of Civil Procedure 38(b);

b. Damages for injuries caused by deprivation rights under federal law;

c. Compensatory damages as allowed by law for deprivation of rights under federal law;

d. Punitive damages as allowed by law for deprivation rights under federal law;

e. Award Plaintiff his reasonable attorneys' fees and expenses of litigation; and

f. Any and other such relief that this Honorable Court or the Finder of Fact deems equitable and just.

Respectfully submitted this 4th day of January, 2024.

<div style="margin-left: 40%;">

By:  /s/Douglas R. Kertscher
Douglas R. Kertscher (pro hac vice)
Georgia State Bar No. 416265
John N. Mahaffey (pro hac vice)
Georgia State Bar No. 222671
**HILL, KERTSCHER &**
**WHARTON, LLP**

</div>

3625 Cumberland Boulevard SE, Suite 1050
Atlanta, Georgia 30339
Tel: (770) 953-0995
Facsimile: (770) 953-13581
Email: drk@hkw-law.com
jm@hkw-law.com

John P. Batson
Georgia Bar No. 042150
Law Offices of John P. Batson
1104 Milledge Road
Augusta, GA 30904
Tel: (706) 737-4040
Facsimile:
Email: jpbatson@aol.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | |
|---|---|
| **AHMED S. ISMAEL,** | |
| Plaintiff**,** | CIVIL ACTION FILE NO.: |
| **vs.** | 1:22-cv-108 |
| **SHERIFF RICHARD ROUNDTREE,** in his individual and official capacity as Sheriff of Richmond County, | **JURY TRIAL DEMANDED** |
| **SGT. WILLIAM MCCARTY**, in his individual capacity acting under color of law as a supervisor of the Richmond County Sheriff's Office, and | |
| **COL. CALVIN CHEW**, in his individual capacity acting under color of law as a supervisor of the Richmond County Sheriff's Office. | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I certify that on the 4th day of January, 2024, I caused to be electronically

transmitted the foregoing document to the Clerk of the Court using the CM/ECF

system for filing and transmittal of a Notice of Electronic Filing to the following

participants and law firm who are registered CM/ECF users, and will be served by

the CM/ECF system.

*/s/Douglas R. Kertscher*
Ga Bar No. 416265