# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# AUGUSTA DIVISION

| | |
|---|---|
| **AHMED S. ISMAEL,**<br><br>    Plaintiff**,**<br><br>**vs.**<br><br>**SHERIFF RICHARD ROUNDTREE**, in his individual and official capacity as Sheriff of Richmond County,<br><br>**SGT. WILLIAM MCCARTY**, in his individual capacity acting under color of law as a supervisor of the Richmond County Sheriff's Office, and<br><br>**COL. CALVIN CHEW**, in his individual capacity acting under color of law as a supervisor of the Richmond County Sheriff's Office.<br><br>    Defendants. | CIVIL ACTION FILE NO.:<br><br>1:22-cv-108 |

### PLAINTIFF'S REPLY BRIEF IN SUPPORT
### OF MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff Ahmed S. Ismael pursuant to Local Rule 7.6, and hereby submits the following Reply Brief in Support of his Motion for Summary Judgment.

1

I.  **Defendants' explanation has been proven false.**

Plaintiff has proven pretext and a "convincing mosaic" of discrimination by proving the falsity of Defendant's explanation. In other words, Plaintiff has proven that **there is no enforced rule against personal errands in patrol cars**.[1] Defendant McCarty testified about the "rules" regarding personal errands in patrol cars:

"Q. Okay. And that -- so -- the fact that he made a personal errand at Burke County, while he was on his way off duty, on his way home from completed training, that's not any rule violation. Is that your testimony today, sir?

A. In and of itself, running an errand in a patrol car is -- is not…"

McCarty I, 107:1-7.

McCarthy further testified:

"Q. And if they're off-site, out of town, and the training ends early, it wouldn't be a violation for them to go to the grocery store, would it, sir?

A. No."

McCarty I, p. 27:1-4.

Yet that's exactly what Defendants claim they fired Isamel for (e.g. running a personal errand while out of town, after his training ended early)!

---

[1] Defendants did not cite any rules about patrol cars at the time they fired Dep. Ismael, and instead argued that for the first time in litigation, 2.5 years later.

> [O]nce the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, <u>the court may not preempt the jury's role</u> of determining whether to draw an inference of intentional discrimination from the plaintiff's prima facie case taken together with rejection of the employer's explanations for its action. At that point, <u>judgment as a matter of law [to Defendant] is unavailable</u>.

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)(emphasis added).

Two other former officers (Murphy and Gross) testified it is common, accepted and known to the supervisors that officers often take personal errands in their patrol car. Yet despite this common occurrence, McCarty testified that in all his years as an Internal Affairs officer, he never once investigated anyone for running a personal errand in a patrol car. (McCarty I, p. 102:20-23). Despite this common occurrence, Roundtree testified that he could not identify a single officer that was disciplined or fired for running a personal errand in a patrol car.[2] Roundtree Dep., p. 102:8-103:5. "It is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

---

[2] This is different from Roundtree's testimony at the Merit Board hearing in November 2021, wherein he falsely testified to the Merit Board that previous officers had been fired for this.

## II.   The Testimony of Murphy and Gross is Admissible and Must be Considered

Defendants urge this Court to commit error by discounting the testimony of Murphy and Gross. Defendants are confused about the purpose of Murphy and Gross's testimony. Murphy, Gross, McCarty and Ismael's testimony is put forth to show the falsity of Defendants' explanation, e.g., **to show there is no enforced rule against personal errands in patrol cars**.

Though Murphy and Gross may ultimately qualify as comparators[3], their testimony is not required to be that of a comparator in order to be evidence of pretext and of a convincing mosaic of retaliation. *Jenkins v. Nell*, 26 F.4th 1243, 1251 (11th Cir. 2022)(reversing grant of summary judgment to defendant, finding that "Although Jones was not a strict comparator, the evidence that he threatened his supervisor…and did not incur any additional warnings or discussion about his comments is relevant"); *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 947 (11th Cir. 2023)("it is possible that her comparators were insufficient to establish a prima facie case yet still relevant to the ultimate question of intentional discrimination.")

Here, Ismael can easily establish a prima facie case from temporal proximity (8 days) alone. *Tebo v. City of DeBary, Fla.*, 784 F. App'x 727, 731 (11th Cir. 2019)

---

[3] Defendants cite the "nearly identical" standard, which was overruled in *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019)(en banc).

(fact that plaintiff was terminated Tebo "a mere 32 days after receiving her informal complaint" established prima facie case); *Rice v. James*, 2019 WL 4132681, at *20 (S.D. Ga. 2019) (denying defendant's motion for summary judgment, finding that "a two-week proximity between [protected conducted] and Plaintiff's termination precludes summary judgment")." Accordingly, it is not necessary for Ismael to show strict comparators in his prima facie case, and accordingly (as in *Tynes* and *Jenkins*), the testimony of Gross and Murphy must be considered within pretext and the "convincing mosaic" of the evidence. It would be error to fail to consider this testimony.

Notably, Defendants have not put in any evidence to dispute the main thrust of Murphy's or Gross's testimony. Defendants instead spend pages attacking Supervisor Gross and one line of his testimony, (Dkt. 57, p. 5-7), while ignoring the key thrust of his testimony:

> during my time as a patrol deputy and as a supervisor, I observed and was aware that it was common, frequent and accepted for officers to make reasonably short personal detours (for groceries, at retail stores like Best Buy, etc.) on their way home from work, while off duty…This was common and accepted and was known to supervising officers. I was not given any instruction about this, and was not taught that there was anything wrong with or forbidden about this practice.

If this were not true, where are the affidavits from Defendants or other supervisors saying they were not aware of this practice? Where are the training documents showing this is an improper practice?

Murphy's testimony is similar, showing that personal errands in patrol cars are "common, accepted", "known to supervisors" and that he was "not given any instruction about this, and was not taught that there was anything wrong with or forbidden about this practice." As to Murphy, Defendants only complain that Murphy doesn't show that Roundtree was aware of such practice, but don't point to any place in the record where Roundtree denies this common practice. And even if they had, it misses the point: a reasonable jury would *infer* knowledge of this from Defendants' roles as long-time supervisors and directors of written training/policy.

Moreover, Defendants don't dispute that Defendant McCarty is aware that personal errands in patrol cars is acceptable (see above); Defendants concede that Roundtree was apprised of "everything" by Defendant McCarty. (Dkt. 57-1, pg. 9, Response to Material Fact 35).

### III. Defendant Chew Gave False Testimony, and This is Evidence of Pretext and Convincing Mosaic

Defendant Chew testified in the Merit Board hearing and his deposition testimony that he received anonymous calls about Ismael on consecutive days, September 27 and 28. (Chew Dep., 41:2-10, 41:19-22, 42:4-10, 59: 12-1). Chew testified that these calls, supplying information that Plaintiff had visited and interviewed at Burke County, contributed to the decision to terminate Plaintiff. (Chew Dep., 46:23-47:6).

But this story does not add up. At 8:31 a.m. on September 27, 2021, McCarty emailed his former coworker and Burke County officer Jimmy Wylds: "I have been advised that Deputy Ismael showed up there in our patrol care and in uniform to fill out an application." McCarty testified that he must have known about Plaintiff's stop at the Burke County prior to 8:31 a.m. on September 27 (McCarty II Dep., 51:16-25), so Chew's "anonymous call" must have come in before 8:31 a.m. on September 27. However, Chew's phone records show no calls prior to 8:31 a.m. (Dkt. 50-6 – Chew Phone Records).

Defendants are unable to substantively dispute these facts. (*See* Dkt. 57-1, p. 7, Defendants' Response to Statement of Material Facts No. 29).

Instead, oddly, Defendants argue that Chew's false statements under oath were "nothing suspicious" because the false statements about anonymous phone calls that never occurred purportedly revealed "accurate" information about Ismael's actions. (Dkt. 57, p. 10). Which misses the point: the testimony at the merit board was false! Why give false testimony if Defendants were sincerely motivated by only its purported legitimate non-discriminatory reason? To establish pretext at the summary judgment stage, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405

F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Said differently, if Defendants were only motivated by the reason they claim, then isn't it implausible, inconsistent and/or incoherent for Chew to create a fake story about anonymous phone calls?

> We routinely expect that a party give honest testimony in a court of law; there is no reason to expect less of an employer charged with unlawful discrimination. If the employer fails to come forth with the true and credible explanation and instead keeps a hidden agenda, it does so at its own peril. Under those circumstances, there is no policy to be served by refusing to permit the jury to infer that the real motivation is the one that the plaintiff has charged.

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1537 (11th Cir. 1997).

Here, no reasonable jury could find Chew credible since Chew undisputedly made up a false story about anonymous phone calls, and then gave false testimony under oath about it.

## IV. Defendants' Contradictory Testimony

Defendants claim that they have "clearly articulated" their proffered legitimate reason for termination: that "Plaintiff violated the conduct policy and brought discredit to the RCSO." (Dkt. 57, p. 4). In support, **<u>Defendants cite testimony that they contradict elsewhere in the record</u>**.

For example, Defendants cite testimony from Roundtree, Rhan, McCarty, and Chew to the effect that it was improper for Plaintiff to interview for a job with

8

another police agency. (Dkt. 57, p. 4-5). How do you square this with Sheriff Roundtree's sworn testimony that "If an employee wants to work at another agency, that is fine," (Roundtree Dep., 88:7-20) or McCarty's testimony that there is no rule against applying at another agency (McCarty II Dep., 44:2:5)?

Similarly, Defendants cite deposition testimony to the effect that it was improper for Plaintiff to use his patrol car for a personal errand while off-duty. (Dkt. 57, p. 4-5). How do you square this with the sworn testimony of McCarty discussed in Section I?

No reasonable jury could credit this inconsistent testimony. *Moore v. City of Atlanta*, Georgia, No. 1:20-CV-3380-JPB-JKL, 2023 WL 2646300, at *6 (N.D. Ga. Mar. 27, 2023). These inconsistencies demonstrate that Defendants' pretext is far from "clear and reasonably specific." *Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000).

**V.     Defendants Didn't follow Their Own Policies and Procedures**

Defendants' final substantive argument, that McCarty didn't have a policy or procedure to interview the subjects of internal affairs investigations (Dkt. 57, p. 10), is just wrong. McCarty testified that it was "standard process" for an investigative subject to be given "an open-ended invitation to submit anything he feels is relevant." (McCarty II, p. 32:8-15). McCarty initially gave false testimony that

9

Ismael was given the same opportunity (McCarty II, p. 33:5-9), but **then changed his testimony** after being shown Ex. 22 (McCarty II, p. 34:8-35:3).

McCarty then testified:

"Q. So this policy that you just told us about that you gave Jenkins the benefit of, saying, "Hey, anything else you think is relevant, let us know," Ismael didn't get the benefit of that policy; right?

A. I -- I'd agree with that.

Q. In fact, Ismael didn't get the opportunity to explain at all what he'd done or why he'd done it or when he'd done it before the termination decision came down; right?

A. Correct."

McCarty II, p. 35:7-16.

Defendants make no effort to explain why the Internal Affairs complaint against Ismael was treated so differently than both Internal Affairs complaints against Jenkins (one by Ismael, one by private citizens). Why the rush to "investigate" and terminate Ismael, while Jenkins was given kid glove treatment, and not asked about his alleged wage theft nor citizen witnesses interviewed?

Why were Defendants so purportedly offended by Ismael's behavior (subjectively claiming he "discredited the sheriff's office"), while completely

ignoring the allegation that Jenkins had committed wage theft against private citizens?

Defendant Rountree's explanation of the difference is nonsensical (Compare Roundtree Dep. p. 88:7-25 with Roundtree Dep. p. 89:6-25), and Roundtree can only give false testimony (no evidence in the record for same) that the wage theft allegations against Jenkins were investigated. In fact they were not, and McCarty never even asked Jenkins or the private citizens making the complaints[4] in writing about these allegations. (McCarty I Dep., p. 116:16-20; Ex. 3 to McCarty I Dep.).

The disparate treatment between Ismael and Jenkins (the Sheriff's "good friend" of many years and former partner) is more evidence of Defendants' intent to retaliate against Ismael. No reasonable jury could rule for Defendants, whom offer only an incredibly implausible story that is not corroborated by their behavior/emails at the time in 2021, their Merit Board testimony at the time[5] in 2021, or by any pattern or practice of prior behavior existing in 2021 (or even now), and instead is only supported only by their own self-serving, subjective testimony.

---

[4] McCarty admitted that Internal Affairs policy does not allow him to ignore complaints of crimes that are alleged against RCSD officers. (McCarty I Dep., 66:18-23).

[5] At no point in their Merit Board testimony or in any of their internal documents did Defendants mention the "vehicle policy" that they now cite for the first time in this litigation.

11

Respectfully submitted this 31st day of May, 2024.

By: /s/Douglas R. Kertscher
Douglas R. Kertscher (pro hac vice)
Georgia State Bar No. 416265
John N. Mahaffey (pro hac vice)
Georgia State Bar No. 222671
**HILL, KERTSCHER & WHARTON, LLP**
3625 Cumberland Boulevard SE, Suite 1050
Atlanta, Georgia 30339
Tel: (770) 953-0995
Facsimile: (770) 953-13581
Email: drk@hkw-law.com
jm@hkw-law.com

John P. Batson
Georgia Bar No. 042150
Law Offices of John P. Batson
1104 Milledge Road
Augusta, GA 30904
Tel: (706) 737-4040
Facsimile:
Email: jpbatson@aol.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# AUGUSTA DIVISION

| | |
|---|---|
| **AHMED S. ISMAEL,** <br><br> Plaintiff**,** <br><br> vs. <br><br> **SHERIFF RICHARD ROUNDTREE**, in his individual and official capacity as Sheriff of Richmond County, <br><br> **SGT. WILLIAM MCCARTY**, in his individual capacity acting under color of law as a supervisor of the Richmond County Sheriff's Office, and <br><br> **COL. CALVIN CHEW**, in his individual capacity acting under color of law as a supervisor of the Richmond County Sheriff's Office. <br><br> Defendants. | CIVIL ACTION FILE NO.: <br><br> 1:22-CV-108-JRH-BKE |

## CERTIFICATE OF SERVICE

I certify that on the 31st day of May, 2024, I caused the foregoing document to be electronically transmitted to the Clerk of the Court using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

*/s/Douglas R. Kertscher*
Ga Bar No. 416265

13