IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

AHMED S. ISMAEL,                    *
                                    *
        Plaintiff,                  *
                                    *
        v.                          *        CV 122-CV-108
                                    *
SHERIFF RICHARD ROUNDTREE, in       *
his individual and official         *
capacity as Sheriff of the          *
Richmond County Sheriff's           *
Office, et al.,                     *
                                    *
        Defendants.                 *
                                    *

_____

**O R D E R**

_____

Before the Court are Plaintiff's motion for summary judgment
(Doc. 50) and Defendants' motion for summary judgment (Doc. 52).
For the following reasons, the Court **GRANTS** Defendants' motion for
summary judgment and **DENIES** Plaintiff's motion for summary
judgment.


## I. BACKGROUND

Plaintiff, a naturalized United States citizen born in Iraq,
served in the Iraqi Army before immigrating to the United States
in 2008. (Doc. 57-1, at 1.) Relevant to this action, in March of
2020, Plaintiff was hired by Defendant Roundtree to work as a
Sheriff's Patrol Deputy with the Richmond County Sheriff's Office

("RCSO").    (Id.)    All Parties were employees at RCSO during the events giving rise to this suit.    (See Doc. 42, at 3; Doc. 45, at 12; Doc. 46, at 3; Doc. 49, at 4.)    Defendant McCarty worked as an internal affairs officer, reporting to Glen Rahn, who is not a party to this suit (Doc. 46, at 4; Doc. 47, at 3); Defendant Chew served as colonel over the agency, with his primary duties including administrative matters such as termination and disciplinary decisions (Doc. 42, at 3); and Defendant Roundtree served as Sheriff, in which he made the final decisions regarding termination and disciplinary decisions (Doc. 49, at 4-5).    While employed with RCSO, Plaintiff worked a "special duty assignment" in which he and other deputies provided security at Urban Air, an adventure park in Augusta, Georgia (the "Urban Air Special"). (Doc. 56-1, at 2-3.)    Plaintiff was the "Officer in Charge" of the Urban Air Special, with at least three other officers working under and reporting to him, including Officer Everette Jenkins, who at the time was the Commander of RCSO's Special Weapons and Tactics ("SWAT") team.    (Id. at 3-4; Doc. 52-4, at 1.)

While working the Urban Air Special together, Plaintiff and Jenkins initially got along, and on or about September 10, 2021, Jenkins invited Plaintiff to join RCSO's SWAT team conditioned upon Plaintiff passing a required SWAT course.    (Doc. 56-1, at 4-5.)    Plaintiff completed the course, which was held in Forsyth, Georgia, the week of September 13, 2021; however, he ultimately

failed the final written exam on Friday, September 17, 2021, and was therefore unable to join the SWAT team. (Id. at 6.) On the same day that he failed the final SWAT exam, Plaintiff stopped at the Burke County Sheriff's Office ("BCSO") to inquire about employment opportunities while on his way home from the course. (Id. at 8.) Although the Parties dispute whether he was on or off duty at this time, Plaintiff was in his RCSO patrol vehicle and wearing his RCSO uniform at the time of this stop. (Id.)

The following Monday, September 20, 2021, Plaintiff filed an internal affairs complaint at RCSO with Defendant McCarty, alleging discrimination by Jenkins. (Id. at 9.) The complaint included allegations that Jenkins "made several offensive remarks concerning [Plaintiff's] race (Middle Eastern)" while the two were working at the Urban Air Special and at other RCSO events including "terrorist," "go back to the sand," and "[d]on't worry everyone, he doesn't have a bomb." (Doc. 52-4, at 1.) Plaintiff provided signed statements from William Gilbert, the owner of Urban Air, and Jordan Chambliss, a manager at Urban Air, to corroborate these allegations. (Id. at 16-18.) When asked if he ever spoke up about the upsetting nature of the comments, Plaintiff said he never had out of concern that if he did so he would not be allowed to join the SWAT team. (Doc. 52-4, at 2.) In addition to the discrimination claims, the complaint alleged that Jenkins would arrive late to the Urban Air special but still expect to be paid

in full and that Jenkins made upsetting comments about Plaintiff's pride in a text exchange following Plaintiff failing the SWAT exam. (Id. at 1-2, 8-10.)

In response to Plaintiff's complaint, Defendant McCarty conducted an investigation of the allegations and prepared an incident report documenting such. (Doc. 52-4.) Defendant McCarty also informed his superior, Defendant Chew—who in turn notified Defendant Roundtree—of Plaintiff's complaint pursuant to RCSO's standard practices. (Doc. 47, at 3; Doc. 49, at 4-5; Doc. 42, at 5.) According to the incident report, Defendant McCarty contacted several people regarding Plaintiff's allegations during his investigation. (Doc. 52-4.) One such individual was Jenkins himself, who admitted to telling Plaintiff he "looked like a terrorist" because Plaintiff wore a "tactical type shirt and some kind of facemask" to the Urban Air Special but denied making other comments. (Id. at 4-5.) Defendant McCarty also reached out to Plaintiff around 11:00 A.M. on September 28, 2021, while Plaintiff was off duty, and asked him to come in to speak with him as soon as he could.[1] (Doc. 47, at 15-16; Doc. 56-1, at 10.) According to the incident report, Plaintiff was interviewed by RCSO's

---

[1] It is unclear from the record whether Defendant McCarty's motivation for asking Plaintiff to come in was to discuss his discrimination complaint, or to discuss Plaintiff's stop at BCSO. (Doc. 46, at 23.) However, the conversation was included as part of the investigation into Plaintiff's complaint and the record reflects that both matters were discussed during the conversation. (Id.; Doc. 52-4, at 5.)

4

internal affairs regarding his discrimination complaint approximately an hour and a half later, at around 12:30 P.M. that day. (Doc. 52-4, at 5.) Ultimately Plaintiff's discrimination complaint was deemed "not sustained" on October 19, 2021, due to a lack of supporting evidence. (Id. at 7.)

Coincidentally or not, on or about the same time Plaintiff received this call from Defendant McCarty asking him to come in, he was scheduled to be at BCSO for an interview for employment. (Doc. 56-1, at 10.) In the interim — about an hour after Defendant McCarty asked Plaintiff to come in, but prior to him speaking with Plaintiff — Defendant McCarty's supervisor sent an email to Defendants Roundtree and Chew stating, "Just confirmed Deputy Ishmael [sic] was in Burke County in our vehicle doing an interview to be hired. He will not be hired and we will have the [disciplinary report] for [t]ermination ready by the time we finish talking with him." (Doc. 49-2, at 1.) Defendant McCarty immediately confirmed the information with the captain of BCSO, and Plaintiff does not dispute that at this time he was in fact at an interview with BCSO in his RCSO vehicle. (Doc. 46, at 23; Doc. 56-1, at 10.) At some point that same day, Defendant Roundtree signed the disciplinary report recommending termination of Plaintiff, citing "Manner Of Conduct 4.4 (A, B, C)" as the relevant violation and, in effect, terminating Plaintiff. (Doc. 52-5, at 1.) Plaintiff was officially terminated the following day,

September 29, 2021.  (Doc. 42, at 14.)  Prior to his termination Plaintiff had been disciplined twice while working at RCSO – once eleven months prior for "Unsatisfactory Performance" and once one month prior for "Manner of Conduct" and "Unsatisfactory Performance."  (Doc. 52-5, at 3-5.)

Although it is unclear when Defendant Roundtree signed the report, Defendant McCarty prepared the draft recommending termination prior to speaking with Plaintiff.  (Doc. 47, at 10.) The report cited Plaintiff's two stops at BCSO in his RCSO vehicle as the basis for termination, asserting that these actions violated RCSO's Manner of Conduct 4.4, which prohibits actions that "reflect discredit upon the Sheriff's Office."  (Doc. 52-5, at 1; see Doc. 52-8, at 3.)  According to Defendants, Defendant Chew first became aware of Plaintiff's visits to BCSO from an anonymous call reporting Plaintiff's first visit received sometime between September 20, and September 27, 2021, and Defendant Chew informed Defendant McCarty of the visit on September 27, 2021.  (Doc. 42, at 3, 12.)  Plaintiff disputes whether Defendant Chew did in fact receive an "anonymous" call.  (Doc. 47-1, at 8.)  In either event, Defendant McCarty confirmed Plaintiff's presence at BCSO with the Captain of the BCSO that same day.  (Doc. 46, at 22-23.)  While it is also unclear exactly when Defendant Roundtree first became aware of Plaintiff's visits to BCSO, it is undisputed he was apprised of

all relevant information prior to Plaintiff's termination. (<u>See</u> Doc. 49, at 18; Doc. 57-1, at 9.)

On August 14, 2022, Plaintiff filed this suit against Defendants pursuant to 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. §§ 1981, 1983 and 1985(3); and 28 U.S.C. §§ 1331 and 1343. (Doc. 1, at 5.) On January 4, 2024, Plaintiff filed a second amended complaint against Defendants Roundtree, McCarty, and Chew, bringing a claim for retaliation in violation of 42 U.S.C. § 1981, enforceable through 42 U.S.C. § 1983. (Doc. 34, at 13.) Specifically, Plaintiff alleges Defendants conspired to terminate him for pretextual reasons in retaliation for engaging in the protected activity of filing a formal complaint charging racial discrimination. (Doc. 34, at 13-16.) As such, Plaintiff claims Defendants are liable to him for damages caused by their unlawful retaliation, including compensatory and punitive damages. (<u>Id.</u> at 19.)

On April 12, 2024, Plaintiff moved for summary judgment. (Doc. 50.) Defendants opposed Plaintiff's motion (Doc. 57), and Plaintiff replied in support of his motion (Doc. 60). Also on April 12, 2024, Defendants moved for summary judgment on Plaintiff's retaliation claim. (Doc. 52.) Plaintiff opposed Defendants' motion (Doc. 56), and Defendants replied in support of their motion (Doc. 61).

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001) (citation omitted). The court must view factual disputes in the light most favorable to the non-moving party and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proof at trial, the movant has two options as to how it can carry its initial burden. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993). The movant may either show an absence of evidence to support the non-movant's

case or provide affirmative evidence demonstrating the non-movant's inability to prove its case at trial. <u>Id.</u>

If the movant carries its initial burden, the non-movant "must demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Vaughn v. Ret. Sys. Of Ala.</u>, 856 Fed. App'x 787, 789 (11th Cir. 2021) (citation omitted). The non-movant must tailor its response to the method by which the movant carries its initial burden. <u>Fitzpatrick</u>, 2 F.3d at 1116-17. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." <u>Id.</u> at 1116. On the other hand, if the movant shows a lack of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1116-17 (citations omitted). The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. <u>See</u> <u>Morris v. Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided all Parties notice of the motions for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 51; Doc. 53.)  For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied.  The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is ripe for consideration.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants argue they are entitled to summary judgment for three reasons: (1) Plaintiff's claim with respect to Defendant Roundtree fails as a matter of law; (2) Plaintiff fails to state a claim against Defendants Chew and McCarty; and (3) Defendants Chew and McCarty are entitled to qualified immunity.  (Doc. 52-1, at 2-15.)  The Court addresses these arguments in turn, construing any factual disputes in the light most favorable to Plaintiff.

Defendants argue that Plaintiff's claims against Defendant Roundtree in his individual capacity fail as a matter of law because "Plaintiff fails to establish a prima facie case of retaliation, and he fails to show that his termination was pretext for retaliation."[2]  (Id. at 3.)  Plaintiff disagrees, asserting

---

[2] Defendants also contend that they are entitled to summary judgment as to claims brought against Defendant Roundtree in his official capacity.

Defendant's motion ignores Plaintiff's fact-based arguments, shifts their own fact-based arguments, and relies on overruled or erroneous propositions of law. (Doc. 56, at 2-3.)[3]

Claims for retaliation in violation of 42 U.S.C. § 1981 are enforceable against state actors via 42 U.S.C. § 1983. See Bryant v. Jones, 575 F.3d 1281, 1288 (11th Cir. 2009). Where, as here, a plaintiff's retaliation claim is based on circumstantial evidence, the claim is analyzed under the McDonnell Douglas burden shifting framework. Id. at 1307 (applying the framework to a § 1981 retaliation claim) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Under McDonnell Douglas, the plaintiff carries the initial burden of establishing a prima facie case of retaliation. Id. at 802. To do so under Title VII or § 1981, a plaintiff must prove that (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse action, and (3)

---

(Doc. 52-1, at 2-3.) Because Plaintiff now withdraws any claims against Defendant Roundtree in his official capacity (Doc. 56, at 5), Defendants' motion for summary judgment with respect to these claims is **DENIED AS MOOT** and Plaintiff's claims against Defendant Roundtree in his official capacity are **DISMISSED**.

[3] The Parties address the retaliation claims brought against Defendants Chew and McCarty separately in their briefings, as they dispute whether an individual without decision-making authority can be liable for a retaliation claim and whether these Defendants are entitled to qualified immunity. (Doc. 52, at 13-15; Doc. 56, at 19-24; Doc. 61, at 12-15.) Assuming without deciding Defendants Chew and McCarty could be held liable for their involvement, because Plaintiff's factual arguments in support of his retaliation claims against Defendants Chew and McCarty are largely the same as and intertwined with those underlying his claim against Defendant Roundtree, the Court's analysis applies with equal weight to all three Defendants.

there was some causal relation between the two events. <u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008); <u>Harris v. Bd. of Trustees Univ. of Ala.</u>, 846 F. Supp. 2d 1223, 1240-42 (N.D. Ala. 2012) ("[T]he prima facie elements that govern Plaintiff's § 1981 retaliation claim are essentially the same as those governing Title VII retaliation.")   If the plaintiff establishes a prima facie case, "[t]he burden of production then shifts to the employer to rebut the presumption by articulating a legitimate, non-discriminatory reason for the employment action." <u>Gogel v. Kia Motors Mfg. of Georgia, Inc.</u>, 967 F.3d 1121, 1135 (11th Cir. 2020) (citation omitted).   If the defendant carries its burden, "the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful [retaliation], an obligation that 'merges with the plaintiff's ultimate burden of persuading the factfinder that []he has been the victim of intentional [unlawful retaliation].'" <u>Lewis v. City of Union City</u>, 918 F.3d 1213, 1221 (11th Cir. 2019) (quoting <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981)) (alterations adopted).

## A. Plaintiff's Prima Facie Case

Defendants argue Plaintiff has not established a prima facie claim for retaliation because Plaintiff has not established that he engaged in a statutorily protected activity.   (Doc. 52-1, at 4.)   Defendants' assertion is twofold.   First, they assert,

12

"Plaintiff has not established that he was discriminated against due to membership in a protected racial class" because Jenkins's reported remarks were not race-based.  (<u>Id.</u> at 4-5.)  Second, Defendants assert Plaintiff cannot show he engaged in a protected activity because the underlying conduct alleged does not establish a claim for actual discrimination or hostile work environment. (<u>Id.</u> at 5-7.)

To prevail on a retaliation claim, "a plaintiff need not prove the underlying claim of discrimination which led to h[is protected action], so long as []he had a reasonable good faith belief that the discrimination existed." <u>Anderson v. Twitchell-A Tyco Int'l Co.</u>, 76 F. Supp. 2d 1279, 1288 (M.D. Ala. 1999) (citation and quotation marks omitted).  While discrimination based on one's nation of origin or religion is not actionable under § 1981, an individual may state a claim when the discrimination is based upon his ancestry or ethnic characteristics.  <u>St. Francis College v. Al-Khazraji</u>, 481 U.S. 604, 613 (1987) (recognizing § 1981 claim for discrimination based on plaintiff's Arabic ancestry). Moreover, while it cannot be the sole basis, national origin discrimination may be relevant in determining whether actionable racial discrimination occurred.  <u>Benjamin v. Am. Airlines, Inc.</u>, No. CV 213-150, 2015 WL 8968297, *5 (S.D. Ga. Dec. 15, 2015).  This is often the case because "[i]n some contexts . . . national origin discrimination is so closely related to racial discrimination as

to be indistinguishable." Id. (internal quotations and citation omitted).

The Court finds Plaintiff had a reasonable, good faith belief he was subject to racial discrimination, such that lodging his complaint constituted a protected activity. Jenkins admittedly made comments alluding to Plaintiff resembling a terrorist on several occasions. (Doc. 52-12, at 2.) There is no evidence in the record that Jenkins's comments were viewed or intended as comments on Plaintiff's religion or place of origin. To the contrary, Plaintiff's Middle Eastern race was readily apparent from his appearance and Plaintiff, Defendants, and uninterested witnesses all perceived Jenkins's comments to be based on Plaintiff's race. (See Doc. 17, at 12-13; Doc. 44, at 10; Doc. 45, at 36; Doc. 49, at 13; Doc. 52-4, at 1, 16-18.) Jenkins contends that his comments were based on Plaintiff's clothing (Doc. 52-12, at 2); however, the owner of Urban Air did not recall Plaintiff ever wearing anything irregular. (Doc. 44, at 14.) Further, Jenkins purportedly made these comments on a variety of occasions, not just when and if Plaintiff wore a "tactical type shirt and some kind of facemask," and represented to Plaintiff he would not approve him getting onto the SWAT team if Plaintiff reported the comments. (Doc. 52-4, at 4-5; Doc. 45, at 35.)

Defendants point out that Plaintiff has "only ever identified as white to the RCSO," presumably relying on Plaintiff's

identification as white in his Equal Employment Opportunity
Commission Complaint. (Doc. 52-1, at 5; Doc. 56, at 8.) However,
this does not affect the Court's findings both because it is
unclear Defendants were even aware of this identification, which
was made long after his termination, and because § 1981's purpose
is to protect identifiable classes of persons, such as those of
Arabic descent, regardless of what race they may be classified as
under modern scientific theory. St. Francis College, 481 U.S. at
613. The Court therefore finds Plaintiff has sufficiently pled he
engaged in a protected activity. Because Defendants concede for
purposes of this motion Plaintiff could establish the remaining
two elements necessary for a prima facie case, the Court concludes
Plaintiff has sufficiently established a prima facie retaliation
claim. (Doc. 52-1, at 4.)

## B. Legitimate Reason and Pretext

Despite Plaintiff's prima facie case, Defendants assert
Defendant Roundtree had a legitimate, non-retaliatory reason for
Plaintiff's termination. (Doc. 52-1, at 8.) Namely, Defendants
contend Plaintiff was terminated because Defendant Roundtree felt
Plaintiff acted in a way that discredited RCSO when he drove his
RCSO vehicle to BCSO to seek employment opportunities there,
thereby violating the RCSO Code of Conduct. (Id.) Plaintiff does
not dispute he engaged in this conduct, nor that the applicable

Code of Conduct, section 4.4, prohibits conduct that may reflect discredit on RCSO. (Doc. 56-1, at 8, 10; Doc. 52-8, at 3.)

In determining whether a defendant has provided a sufficient reason for the adverse action, the burden is "exceedingly light." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769-70 (11th Cir. 2005). "An employer must simply advance an explanation for its action that is not discriminatory in nature." Lee v. Safe-Dry Carpet and Upholstery, No. 20-14275, 2021 WL 3829028, at *3 (11th Cir. Aug. 27, 2021) (citation omitted). Plaintiff does not dispute that he engaged in the conduct for which Defendants claim he was terminated, and Defendants have consistently pointed to this conduct as the grounds for Plaintiff's termination. (Doc. 52-1, at 8, 10; see Doc. 52-5, at 1; Doc. 42, at 9-11; Doc. 46, at 21; Doc. 49, at 18.) Thus, Defendants have provided a legitimate reason for Plaintiff's termination sufficient to rebut the presumption of retaliation established by Plaintiff's prima facie case.

Still, Plaintiff asserts Defendants cannot prevail on a motion for summary judgment because there is a genuine factual dispute as to whether the reason provided by Defendants was pretextual. (Doc. 56, at 24.) For Plaintiff to establish pretext, he must show "*both* that the reason was false, *and* that [retaliation] was the real reason." Harris v. Quantix SCS, LLC, No. 4:22-CV-253, 2024 WL 1337887, at *4 (S.D. Ga. Mar. 27, 2024)

16

(quoting Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1163 (11th Cir. 2006) and St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). "[T]o withstand summary judgment, a plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could find them unworthy of credence." Id. at *5 (citations and internal quotations omitted). Importantly, the inquiry is not whether the Court agrees with the employer's reason, but whether the reason is legitimate. Id. at *3 ("[T]he legitimate, nondiscriminatory reason offered by an employer for an action need not be one a judge or juror would act on or approve.") (citation omitted). "An employee cannot rebut a reason by simply quarreling with the wisdom of that reason." Patterson v. Ga. Pac., LLC, 38 F.4th 1336, 1352 (11th Cir. 2022) (citation and internal quotations omitted).

Defendants contend Plaintiff was fired because he "reflect[ed] discredit upon the Sheriff's Office" when he used RCSO assets (his RCSO vehicle), while on RCSO time, to apply for employment at a different sheriff's office.[4]  (Doc. 52-5, at 1;

_____

[4] While Plaintiff asserts that Defendants' statement he was "on Richmond County time" during his first stop at BCSO is false, Plaintiff's logged hours reflect that he was paid for work from 8:00 A.M. to 4:00 P.M. on September 17, 2021, and Defendant McCarty, based on information from the BCSO Captain believed Plaintiff's stop took place around 3:00 P.M. that day. (Doc. 56, at 13; Doc. 52-6; Doc. 52-5; Doc. 46, at 22.) Regardless, even assuming the statement is false, the relevant Code of Conduct

Doc. 52-8, at 3.)  Further, Defendant Chew was under the impression Plaintiff did so a second time after being instructed not to. (Doc. 42, at 13.)  These beliefs "might legitimately motivate a reasonable employer to terminate an employee." Berry v. Crestwood Healthcare LP, 84 F.4th 1300, 1308 (11th Cir. 2023); see also Silvera, 244 F.3d at 1261 ("Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.") (citation omitted).  Thus, Plaintiff must "address [this] reason head on and rebut it." Berry, 244 F.4th at 1307-08 (internal quotations and citation omitted).

Plaintiff provides a laundry list of purported issues of fact regarding Defendants' intent. (See Doc. 56 at 11-15.)  The Court's analysis focuses first on those that most directly attempt to rebut Defendants' reason for termination, then turns to Plaintiff's additional arguments.

Plaintiff first asserts the reason offered by Defendants is false because RCSO officers testified that "personal errands in patrol cars (such as here) are common," and because Defendants have not identified another officer fired for similar violations. (Doc. 56, at 12 (internal quotations omitted).)  It is true that

---

applied if Plaintiff was off duty and, thus, the purported rationale was likewise still legitimate.  (See Doc. 52-8, at 3.)  Further, Plaintiff has provided no evidence showing this was "more than a mistake." Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1261 (11th Cir. 2001). Therefore, whether Plaintiff was on RCSO time is immaterial to the Court's conclusions herein.

if a defendant proffers that the reason for termination was violation of a rule, the plaintiff may nevertheless show the reason was arguably pretextual by showing other employees, similarly situated in all material respects, were treated differently. Lewis, 918 F.3d at 1218 (11th Cir. 2019) (defining "similarly situated"); Hankins v. Airtran Airways, Inc., 237 Fed. App'x 513, 522 (11th Cir. 2007) (considering treatment of comparators in the context of a retaliation claim at the pretext stage of the McDonnell Douglas framework). Here, however, Plaintiff cites only to general statements that it was common for officers to engage in errands in RCSO vehicles on their way to or from work such as making stops at the store, picking up food, going to the gym, or picking up their children. (Doc. 50-4, at 3; Doc. 50-5, at 3; Doc. 46, at 8.) The most specific example provided is that an unnamed officer picked his child up from school. (Doc. 50-5, at 3.) These vague, general allegations are insufficient to show other officers engaged in similar conduct or that Defendant Roundtree was aware of such conduct. Beyond their vague nature, the examples of errands provided are permissible under the Code of Conduct. (See Doc. 52-7 (providing limited grounds for using a RCSO vehicle while off duty); Doc. 52-8; Doc. 45, at 45-46.) Further, all are materially distinct in nature from driving an RCSO vehicle to apply for employment elsewhere, as none are similarly facially averse to RCSO's interests. Moreover,

Plaintiff's general allegations provide no evidence an officer with similar disciplinary history to himself engaged in even remotely similar conduct.[5] <u>Berry</u>, 84 F.4th at 1312 (holding that employees who engaged in different degrees of the same type of conduct were not similarly situated); (<u>see</u> Doc. 52-9, at 2 (providing the disciplinary matrix used by RCSO that factors in both type of offense and disciplinary history); Doc. 52-5, at 3-5 (documenting Plaintiff's prior disciplinary history with RCSO).) Thus, even assuming the alleged personal errands were common and Defendants were aware of these practices, they do not show the reason for Plaintiff's termination was unworthy of credence because these are not appropriate comparators, nor do they establish conflicting testimony regarding the reason for Plaintiff's termination. Further, the fact that no other officer has been fired for similar conduct, without evidence another officer has actually engaged in sufficiently similar conduct, does not prove the stated reason was false.

---

[5] Insofar as Plaintiff argues the difference in treatment between him and Jenkins evidences retaliatory intent, this finding applies with equal weight. The allegations made against Jenkins were different in nature and surrounding circumstances than those against Plaintiff and the two had different disciplinary histories. (See Doc. 52-5; Doc. 47.) Thus, the treatment of Jenkins is irrelevant as to the Court's analysis into whether Defendants' reason for terminating Plaintiff was legitimate. Further, Jenkins's disciplinary record reflects various disciplinary punishments throughout his employment at RCSO, evidencing that Defendant Roundtree's friendship with Jenkins did not hinder his ability to discipline Jenkins.

Plaintiff also argues there is significant evidence of "falseness," "cover up," and "set-up" surrounding his termination. (Doc. 56, at 12-13.) Namely, Plaintiff asserts Defendant Roundtree falsely testified he has disciplined officers for running personal errands in RCSO vehicles; Defendants McCarty and Chew falsely testified they received "anonymous" calls reporting Plaintiff's conduct; falsities existed in the termination document; Defendant McCarty knew Plaintiff had an interview in Burke County at the time he asked him to come in to the RCSO office; language in Defendant McCarty's emails suggest retaliatory intent; and Defendants failed to follow RCSO policies when terminating Plaintiff. (Id. at 12-14)

First, regarding Defendant Roundtree's testimony, Defendant Roundtree's recollection of whether others have been punished for running personal errands in the past does not amount to a contradiction in his purported reasoning for terminating Plaintiff. (Doc. 52-4; Doc. 49, at 18-19.) To the contrary, Defendant Roundtree has consistently and repeatedly pointed to Plaintiff's visits to BCSO as the reason for Plaintiff's termination. (Doc. 49, at 23; Doc. 52-5.) Second, regarding falseness in the termination report, as previously noted, even assuming Plaintiff is correct on this point, whether Plaintiff was on duty or off duty was immaterial to Defendants' decision. (See note 5, supra.) Third, while Plaintiff argues Defendants failed

to follow RCSO policies by not interviewing Plaintiff prior to firing him, it is undisputed that Plaintiff was interviewed by Defendants on September 28, 2021, only after which he was notified of his termination (Doc. 52-4, at 5-6); further, Plaintiff fails to cite to any RCSO policy that requires interviewing an officer prior to terminating them (Doc. 56, at 12). Finally, regarding Plaintiffs remaining arguments, Plaintiff seemingly takes issue only with how and when Defendants came to know of Plaintiff's conduct. None of these arguments dispute that the underlying conduct occurred or that it was legitimate grounds for termination. None of the evidence cited by Plaintiff shows switching or contradicting reasoning by Defendants such that a reasonable factfinder would find their reason not credible.

Plaintiff also asserts the proximity between the termination and complaint, the friendship between Defendants Roundtree and Jenkins, and the "shifting reasons" provided by Defendants support a finding of pretext. (Doc. 56, at 11-15.) However, while close temporal proximity may preclude summary judgment, an "intervening discovery of misconduct undercuts the inference that [Plaintiff's] complaints caused h[is] termination." Berry, 84 F.4th at 1309. Thus, the intervening discovery of Plaintiff's misconduct in using his RCSO vehicle to apply for employment at another agency severed any inference of retaliation created by the close temporal proximity. Further, Plaintiff's assertion that Defendants'

references to additional rationale would allow a jury to find the cited reason unworthy of credence is not persuasive. (Doc. 56, at 16-17.) Namely, Plaintiff points to Defendant Roundtree's deposition statements in which he purportedly cited additional sections of RCSO's Code of Conduct that Plaintiff's conduct violated and explained that he felt Plaintiff's actions reflected discredit on RCSO because they showed "he was 'willing to use County assets to further [his] career.'" (Id.; Doc. 49, at 24.) However, "[a]dditional reasons for termination are not necessarily inconsistent reasons for termination." Quantix, 2024 WL 1337887, at *5 (citation omitted). Defendant Roundtree's deposition statements certainly expanded upon his rationale; however, his reason did not shift, nor do any of these statements negate his reason for termination in any way. (See Doc. 49, at 24.) To the contrary, as noted above, the Defendants, including Defendant Roundtree have consistently maintained that Plaintiff's use of his RCSO vehicle to seek employment elsewhere was the grounds for termination, and any additional statements were made in support of that reason. (Doc. 42, at 8-9; Doc. 46, at 28; Doc. 49, at 23; Doc. 52-5.) Likewise, the purported friendship between Defendant Roundtree and Jenkins does not negate the proffered reason. (See note 5, supra.) Thus, the Court finds Defendants offered a legitimate non-discriminatory reason for Plaintiff's termination, and Plaintiff failed to prove pretext.

## C. Convincing Mosaic

Alternatively, Plaintiff argues that Defendants should not prevail on their motion for summary judgment because Plaintiff presents a "convincing mosaic" of retaliation. (Doc. 56, at 5.) In the context of Title VII retaliation claims, the Eleventh Circuit has held that under the convincing mosaic framework, "an employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent." Berry, 84 F.4th at 1310. In making such determination, the Eleventh Circuit has identified three nonexclusive categories of evidence that may give rise to an inference of unlawful retaliation: "evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent can be inferred; evidence of systematically better treatment of similarly situated employees; or evidence that the employer's justification for its action is pretextual." Id. at 1312 (citation omitted). The Court can "look beyond the prima facie case to consider all relevant evidence in the record to decide the ultimate question of [retaliation]." Tynes v. Fla. Dep't of Juv. Just., 88 F.4th 939, 947 (11th Cir. 2023), cert. denied sub nom. FL Dep't of Juv. Just. v. Tynes, No. 23-1235, 2024 WL 4426607 (U.S. Oct. 7, 2024). "But inferences in favor of [an employee] can be based only on evidence - not on speculation." Martin v. Fin. Asset Mgmt. Sys., Inc., 959 F.3d 1048, 1058 (11th Cir. 2020). "[T]he convincing mosaic inquiry

is identical to the final stage of the McDonnell Douglas framework: both ask whether there is enough evidence for a reasonable jury to infer [unlawful retaliation]." Ossmann v. Meredith Corp., 82 F.4th 1007, 1020 (11th Cir. 2023) (citation omitted).

Plaintiff relies on the same arguments raised to support pretext under McDonnell Douglas to support finding a convincing mosaic. (Doc. 56, at 11.) Because "the convincing mosaic inquiry is identical to the final stage of the McDonnell Douglas framework," the Court finds Plaintiff's claim also fails under the convincing mosaic of evidence standard for the reasons already stated herein. Ossmann, 82 F.4th at 1020 (citation omitted). Thus, the Court need not decide if the convincing mosaic framework also serves as an independent basis for establishing a retaliation claim brought under § 1981.

### IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (Doc. 52) is **GRANTED** and Plaintiff's motion for summary judgment (Doc. 50) is **DENIED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants, **TERMINATE** all other pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 24th day of January, 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA